Charles M. LUCK, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18408.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 23, 1964.

Decided May 21, 1965.

Petition for Rehearing Denied Aug. 16, 1965.

Danaher, Circuit Judge, dissented in part.

Mr. Dennis J. Tuchler (appointed by this court), Washington, D. C., for appellant.

Miss Carol Garfiel, Atty., Dept. of Justice, with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Victor W. Caputy, Asst. U. S. Attys., were on the brief, for appellee.

Mr. Max Frescoln, Asst. U. S. Atty., also entered an appearance for appellee.

Before DANAHER, WRIGHT and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge:

Appellant was convicted of housebreaking and larceny after a trial at which he put forward an alibi defense. His principal contentions upon appeal are that the District Court erred in (a) receiving in evidence appellant's admission of guilt, and (b) allowing the Government to show by way of impeachment his prior conviction of grand larceny.

Police testimony offered at the trial as a part of the prosecution's case was as follows: At 10:04 P.M. on June 8, 1963, a burglar alarm company received a sig-

nal from a laundry. Police were alerted and arrived at the scene within a few minutes. With officers stationed at various points around the building, a detective climbed a ladder leading to the roof of the laundry building, where he discovered appellant hiding in an exhaust duct. Appellant was brought to the ground, placed in a cruiser, and driven around to the front of the building. There, presently, a guard from the burglar alarm company unlocked the front door of the laundry and the officers, with appellant, entered. It was discovered that a soft drink machine had been broken open and a coin receptacle was on the floor. Appellant was searched, and two $1 bills and $6.40 in silver were found in his right rear pocket. An officer asked appellant if he had broken into the machine, and appellant stated that he had. Asked how he had gained access to the building, appellant explained that he had entered through a large exhaust fan.

Appellant, testifying in his own defense, denied the foregoing version. He said that, at some point between 10:30 and 10:45 on the evening in question, he had just left a companion and was walking along the street several blocks from the laundry. A police cruiser drew up beside him; two officers got out, handcuffed him and took him into custody, saying something to the effect that they "had him this time." He was taken to the laundry, where he arrived at about five minutes of eleven. There he was questioned. At first he denied having robbed the machine or entered the building, but thereafter said what he was told to say because he was tired of questioning. He stated that he had in his possession four $1 bills and $1.40 in change, which was later taken from him at the precinct station. He expressly claimed that any admissions made by him were "not voluntary."

When, during the Government's case and in the presence of the jury, the police officer testified to what appellant had said in answer to a question about the vending machine, defense counsel objected that the admission was the result "of a course of treatment by the police which amounts to coercion, and not of any voluntary nature whatsoever." The court overruled this objection, contenting itself with addressing two or three questions to the police officer as to whether any promises or threats had been made.

This handling of the issue of voluntariness raised by counsel's objection does not comport with the procedural standards prescribed by the Supreme Court in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). We note preliminarily that the court here permitted, and indeed invited, the officer's answer to be forthcoming in the jury's presence even before counsel's objection could be fully articulated.[1] It seems to us ill-advised to let the damaging answer be heard by the jury when it is clear what is about to happen and that the defense is raising an objection. A stake is there-

---

1. This sequence followed upon testimony by the officer that he had had a conversation with appellant about the vending machine shortly after they entered the building:

Q Will you tell the Court and jury what if anything the defendant said concerning that Pepsi Cola machine?

A He admitted in the presence—

MR. FRENCH: Objection, Your Honor.

BY MR. CAPUTY:

Q No conclusion. Tell us what he said.

THE COURT: Tell us the substance.

THE WITNESS: He stated, Your Honor, that he had entered the Pepsi Cola machine.

MR. FRENCH: I object to the admission of this evidence, Your Honor.

THE COURT: What is your basis?

MR. FRENCH: This amounts to an oral admission. It's inadmissible and it is incompetent. It is uncorroborated. It is not threshold. And it is the result, in counsel's opinion, of a course of treatment by the police which amounts to coercion, and not of any voluntary nature whatsoever.

THE COURT: I am forced to admit it as being proper. This is part of the res gestae, in a sense. And it certainly is not in violation of the Mallory rule.

by created in avoiding a mistrial which is likely to be operative, at least subconsciously, in any subsequent inquiry conducted out of the presence of the jury into the issue raised by the objection. In any event, the factual bases of a voluntariness objection are always to be first explored out of the presence of the jury, with opportunity to both sides to give their versions, unless it is clear that the objection is wholly frivolous. We cannot say that it was so here.[2] An adequate recognition of the long-established practice in the District of Columbia would have entailed a hearing outside the presence of the jury at the time the objection was made, and, unless a conclusion of involuntariness was reached, a subsequent submission of that issue to the jury. Jackson v. Denno has now made clear that, in those jurisdictions which permit the jury to determine this issue, a hearing is to be held at which the judge shall determine the issue of voluntariness; and he shall do so in full recognition that, in the words of the Supreme Court, "proof that a defendant committed the act with which he is charged and to which he has confessed is not to be considered when deciding whether a defendant's will has been overborne." 378 U.S. at 385, 84 S.Ct. at 1785. In the record before us it appears that, although the court held no hearing, it did instruct the jury that it could disregard the confession if it accepted the defendant's testimony at the trial as to involuntariness. Thus the requirements of our own practice were met, except for the hearing before the judge. But this, plus a determination by the judge of the issue of voluntariness, are precisely what Jackson v. Denno holds to be essential. Thus, as in Jackson v. Denno, we remand with directions that a hearing of the kind contemplated in that case be held on the issue of voluntariness, with the contingency of a new trial to abide that event.[3]

The second issue raised on this appeal warrants some discussion. While appellant was testifying, he was asked by the prosecutor whether he had pleaded guilty to grand larceny in the District Court on March 15, 1961. Over objection, he was permitted to answer that he had. The ground of the objection was that appellant was a juvenile at the time of the earlier crime, and that a conviction for it could not be introduced in evidence for any purpose, including impeachment of credibility. The Government contended that, because, at the time of the 1961 offense, the Juvenile Court had waived jurisdiction over appellant and he had been treated as an adult in the District Court and sentenced under the Youth Corrections Act, this prior conviction was admissible for impeachment purposes.

Appellant relies in this regard upon the provisions of Section 2308(d) of Title

---

2. The frivolity of the objection was not established simply by the court's canvassing the police officer's opinion as to the voluntariness of the admission. We recognize that some doubt as to the seriousness of the objection is created by counsel's failure to request that a hearing be immediately held out of the presence of the jury at which he could present testimony in support of his objection. The immediate and emphatic nature of the court's response to his objection was not such, however, as to suggest that such a request would have been productive. Moreover, we think there is some responsibility on the court to ascertain whether counsel wishes to press his objection in an evidentiary hearing. In any event, in the light of the importance attached by the Supreme Court

in Jackson v. Denno to such a hearing, we are not disposed to dispense with it solely because counsel did not articulate a request for it.

3. Appellant urged upon appeal that the admissions should also have been excluded because obtained in the course of an unnecessary delay within the prohibition of Rule 5(a), Fed.R.Crim.P. Although this issue was possibly comprehended within the objection at trial by reason of the reference therein to "threshold," and the trial court alluded to it in its ruling, we regard the basic thrust of counsel's objection as having been directed to the question of voluntariness; and this is confirmed by the nature of appellant's subsequent testimony at the trial, which was concerned with the matter of coercion.

16 of the D.C.Code, which are designed to relieve proceedings in the Juvenile Court from the consequences which customarily accompany conviction of crime in a tribunal of general criminal jurisdiction.[4] The Government points out, however, that that statute is in terms addressed to adjudications made by the Juvenile Court in the exercise of its jurisdiction, and that it has no application when that jurisdiction has been expressly waived by the Juvenile Court. Here, appellant was waived out of the jurisdiction of the Juvenile Court, and the District Court was authorized to, and did, try and sentence him as an adult. Such a conviction, so it is said, carries with it the usual incidents, including subsequent exposure to impeachment by reason of the earlier conviction as authorized by 14 D.C.Code § 305 (1961).

We agree with the Government to this extent, namely, that we find no clear purpose on the part of Congress to withdraw from the reach of this last-mentioned statute convictions of juveniles in the District Court as adults following upon waivers of jurisdiction by the Juvenile Court. Just as more severe sentencing provisions are available for the punishment of those who are waived, so does conviction entail the consequence that the Government may seek to use it to attack credibility in a later proceeding. Such harsher consequences are always arguments against the wisdom of waiver in an individual case, but their very persuasiveness for this purpose rests upon the existence of such consequences. This is implicit in Judge Youngdahl's statement, made in support of his conclusion to proceed against a defendant as a juvenile and not as an adult, that to do otherwise would mean that the defendant would "be branded with the mark of 'criminal' for the rest of his life * *." United States v. Anonymous, 176 F.Supp. 325, 326 (D.D.C.1959).[5]

To the extent, however, that the Government's position implies that the prosecution is always entitled to introduce a juvenile's earlier conviction as an adult following upon waiver of jurisdiction over him by the Juvenile Court, we do not agree. Section 305 is not writ-

4. 16 D.C.Code § 2308(d) provides as follows:

"An adjudication upon the status of a child in the jurisdiction of the [juvenile] court does not operate to impose any of the civil disabilities ordinarily imposed by conviction, and a child is not deemed a criminal by reason of an adjudication. An adjudication is not deemed a conviction of a crime, and a child may not be charged with or convicted of a crime in any court, except as provided by section 11–1553. The disposition made of a child, or evidence given in the court, is not admissible as evidence against the child in any case or proceeding in any other court, and the disposition, or evidence, or adjudication, does not operate to disqualify a child in any future civil-service examination, appointment, or application for public service under either the Government of the United States or of the District of Columbia."

5. Chief Judge Laws characterized the Juvenile Court Act as "indicating no purpose to stamp the juvenile with criminal conviction * * * except in extreme cases where waivers are made by the Juvenile Court * * *." White v. Reid, 125 F.Supp. 647, 651 (D.D.C.1954). See also Note, 49 GEO.L.J. 322, 345 (1960), where it is said:

If a conviction is obtained upon the trial, the sentence will involve a typical adult criminal penalty, and the juvenile can be committed to an adult federal prison or reformatory. He irrevocably obtains a criminal record. * * *

The waiver provision first appeared as a part of the revision of the Juvenile Court Act in 1938. That revision enlarged the jurisdiction of the Juvenile Court to cover all offenses committed by persons under 18, but it altered the nature of the court so as to make clear that it was not administering the criminal law. Exposure to that law in the usual way was to follow only upon a waiver by the Juvenile Court of its jurisdiction, which could be effected as to any person over 16 charged with a felony. In 1947 this waiver authority was extended to cover any person charged with an offense punishable by death or life imprisonment.

ten in mandatory terms.[6] It says, in effect, that the conviction "may," as opposed to "shall," be admitted; and we think the choice of words in this instance is significant. The trial court is not *required* to allow impeachment by prior conviction every time a defendant takes the stand in his own defense. The statute, in our view, leaves room for the operation of a sound judicial discretion to play upon the circumstances as they unfold in a particular case. There may well be cases where the trial judge might think that the cause of truth would be helped more by letting the jury hear the defendant's story than by the defendant's foregoing that opportunity because of the fear of prejudice founded upon a prior conviction.[7] There may well be other cases where the trial judge believes the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility. This last is, of course, a standard which trial judges apply every day in other contexts; and we think it has both utility and applicability in this field.[8]

6. 14 D.C.Code § 305 (1961) reads in pertinent part as follows:

"No person shall be incompetent to testify, in either civil or criminal proceedings, by reason of his having been convicted of crime, *but such fact may be given in evidence to affect his credit as a witness*, either upon the cross-examination of the witness or by evidence aliunde; and the party cross-examining him shall not be concluded by his answers as to such matters. * * * [Emphasis added.]"

7. See McCORMICK EVIDENCE § 43, at 94 (1954):

On balance it seems that to permit * * * one accused of crime to tell his story without incurring the overwhelming prejudice likely to ensue from disclosing past convictions, is a more just, humane and expedient solution * * *.

A defendant who is considering whether or not to testify on his own behalf may want, if possible, to know to what extent the trial judge will permit him to be impeached by his past record. Although a trial judge cannot be expected to give preliminary rulings which will foreclose him completely as the trial progresses, it would appear that careful exploration of such a request outside the presence of the jury would be in order.

8. See Colter v. Einbinder, 184 F.Supp. 523 (D.D.C.1960); 4 JONES, THE LAW OF EVIDENCE § 921 (5th ed. 1958); 1 UNDERHILL, CRIMINAL EVIDENCE § 163, at 301, § 165, at 314 (5th ed. 1956):

If, however, the question calls for an answer, which, though ostensibly invoked solely to aid the jury in estimating the credibility of the accused, may, by showing him guilty of other similar .crimes, indirectly lead them to infer that he is guilty of the crime charged, the court may interfere in its discretion.

Compare Michelson v. United States, 335 U.S. 469, 480–481, 487–488, 69 S.Ct. 213, 93 L.Ed. 168 (1948), in which the Supreme Court recognized the trial court's heavy responsibility in regulating the introduction of evidence of the accused's character.

McCormick points out that in England and in Pennsylvania "the accused who takes the stand is shielded, under certain circumstances, from inquiry or proof as to misconduct or conviction of crime when offered to impeach." McCORMICK, EVIDENCE § 43, at 94 (1954). Both Rule 21 of the Uniform Rules of Evidence and Rule 106 of the American Law Institute's Model Code of Evidence strictly limit the use of past convictions to impeach a defendant's credibility. The former provides:

Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his credibility. If the witness be the accused in a criminal proceeding, no evidence of his conviction of a crime shall be admissible for the sole purpose of impairing his credibility unless he has first introduced evidence admissible solely for the purpose of supporting his credibility.

Both the Uniform Rules and the Model Code speak in terms of "admissible" evidence, as distinct from evidence that must be admitted. And in Rule 303 the Code sets up a highly desirable guide for the trial judge:

(1) The judge may in his discretion exclude evidence if he finds that its probative value is outweighed by the risk that its admission will

In exercising discretion in this respect, a number of factors might be relevant, such as the nature of the prior crimes,[9] the length of the criminal record, the age and circumstances of the defendant, and, above all, the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction. The goal of a criminal trial is the disposition of the charge in accordance with the truth. The possibility of a rehearsal of the defendant's criminal record in a given case, especially if it means that the jury will be left without one version of the truth, may or may not contribute to that objective. The experienced trial judge has a sensitivity in this regard which normally can be relied upon to strike a reasonable balance between the interests of the defendant and of the public. We think Congress has left room for that discretion to operate. In reaching the result we do in this case, moreover, we are not to be understood as equating the absence of Congressional purpose to relieve waived juveniles at all events from exposure to impeachment of this kind with an affirmative prescription that such impeachment is always available to the prosecution.

The matter is, we reiterate, one for the exercise of discretion; and, as is generally in accord with sound judicial administration, that discretion is to be accorded a respect appropriately reflective of the inescapable remoteness of appellate review. We cannot say, on the record before us, that the court committed reversible error in permitting this appellant to be asked about his prior conviction, but, in the event that a new trial results from the remand we have concluded to make, the judge trying that cause should feel free to approach the problem, if it arises, as one to be decided according to his best judgment in the light of the record as it develops before him.

The case is remanded for further proceedings not inconsistent herewith.

It is so ordered.

DANAHER, Circuit Judge (concurring in part and dissenting in part).

As the Government's case was being developed and as it turned out, about 25 minutes elapsed between the searching of this appellant and his being booked at the precinct. His trial counsel stipulated that the appellant was booked at 10:45 P.M. Brought from the roof into the laundry plant, the appellant stood in front of a Coke machine which had been broken open. The coin box was on the floor. The appellant was searched. In his right rear pocket were 8 quarters, 37 dimes, 14 nickels and 2 one dollar bills. The prosecutor asked the officer what conversation he had with the appellant in the circumstances just described. Such was the background for the sequence of questions and answers as they appear in footnote 1 of Judge McGowan's opinion, in the course of which the trial judge ruled admissible the appellant's oral statement that he had broken into the Coke machine.

Defense counsel contended that the oral admission was "inadmissible and it is incompetent." In November 1963, just as did the trial judge, I would have ruled against him on both points. Counsel stated "It is uncorroborated," but the record is otherwise. "It is not threshold," he said, and again I disagree. Not until the appellant was brought from the roof and down into the laundry could the officers have known what had hap-

---

\* \* \* \* \*

(b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury \* \* \*.

\* \* \* \* \*

(2) All Rules stating evidence to be admissible are subject to this Rule unless the contrary is expressly stated.

9. See Clawans v. District of Columbia, 61 App.D.C. 298, 62 F.2d 383 (1932); Colter v. Einbinder, note 8 *supra*.

pened. As the trial judge observed, "It certainly is not in violation of the *Mallory* rule."

Our question then arises in the context that defense counsel went on to state that the oral admission was the result "of a course of treatment by the police which amounts to coercion, and not of any voluntary nature whatsoever." In November 1963, as did the trial judge, I would have regarded such purported grounds of objection to be utterly frivolous.

There had not been the slightest suggestion of "coercion." There was then no evidence that the appellant's admissions were other than voluntary. Defense counsel did not ask that the jury be excused and that a hearing be held. There was no proffer of evidence that the police had acted improperly in any respect whatever.

Even so, I reluctantly conclude that we are bound to remand for a hearing on the issue of voluntariness. In Pea v. United States,[1] the trial judge in the absence of the jury had conducted a hearing touching upon the circumstances involving the admissions by the appellant and had received them, subject to corroboration. The Supreme Court vacated our judgment[2] and remanded the case for further proceedings in conformity with its opinion in Jackson v. Denno.[3]

In the latter case the majority wrote that an accused is entitled

"to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession."[4]

Again the majority stated in *Jackson* that

"A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined."[5]

Further, the majority pronounced, the reliability of a confession has nothing to do with its voluntariness and

"proof that a defendant committed the act with which he is charged and to which he has confessed is not to be considered when deciding whether a defendant's will has been overborne."[6]

Under the circumstances and since there had been no such hearing here, a remand is in order that there may be a hearing and determination on the issue of voluntariness whether or not the issue had been raised by an objection patently frivolous at the time it was made, as this one was. So I join in the remand solely because of Jackson v. Denno, *supra*.

With the greatest of deference, I do not agree that it was open to us to consider on this record whether or not "the court committed reversible error in permitting this appellant to be asked about his prior conviction." The Supreme Court in Fitzpatrick v. United States[7] unanimously concluded:

"Where an accused party waives his constitutional privilege of silence, takes the stand in his own behalf and makes his own statement, it is clear that the prosecution has a right to cross-examine upon such statement with the same latitude as would be exercised in the case of an ordinary witness, as to the circum-

---

1. 116 U.S.App.D.C. 410, 324 F.2d 442 (1963).

2. Pea v. United States, 378 U.S. 571, 84 S.Ct. 1929, 12 L.Ed.2d 1040 (1964). If the Supreme Court deemed a remand in order in the Pea case, it certainly is proper here.

3. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

4. *Id.* at 377, 84 S.Ct. at 1781.

5. *Id.* at 380, 84 S.Ct. at 1783.

6. *Id.* at 385, 84 S.Ct. at 1785.

7. 178 U.S. 304, 315, 20 S.Ct. 944, 948, 44 L.Ed. 1078 (1900).

stances connecting him with the alleged crime. * * * The witness having sworn to an *alibi*, it was perfectly competent for the government to cross-examine him * * *."

In Raffel v. United States the Court reiterated that when an accused takes the stand in his own behalf, he does so as does any other witness. His waiver of Fifth Amendment rights is not partial the court said, adding, "having once cast aside the cloak of immunity, he may not resume it at will, whenever cross-examination may be inconvenient or embarrassing." [8]

So it is that under our statute,[9] no person is deemed incompetent to testify by reason of his having been convicted of crime, and Congress has expressly provided that the fact of such conviction *"may be given in evidence* to affect his credit as a witness, either upon the cross examination of the witness or by evidence aliunde; *and the party cross examining him shall not be concluded by his answers as to such matters."* (Emphasis supplied.) [10]

When our statute says that the "fact" of previous conviction "may be given in evidence," to me it is speaking of an option open to "the party cross examining" the witness. I think my colleague has misconstrued the language and its objective. That language tells the trier the fact of conviction *is* evidence, and it *is* to be received. Of course, a party is

not bound thus to impeach a witness. That is why the word "shall" is not used.

If the dictum in Judge McGowan's opinion is intended to be read as meaning that the trial judge—and not the cross examining party—has the option of deciding whether or not the fact of a prior conviction may be used for purposes of impeachment, I disagree. If the discussion is meant to imply that a trial judge may in his discretion exclude such competent evidence, I disagree.

My comment, in turn, does not reject the principle that the trial judge may exercise a broad discretion with reference to cross examination in certain impeachment situations.[11] And certainly since the judge is more than a mere moderator,[12] he may at a bench conference, for instance, advise with counsel as to the desirability of pursuing cross examination as to—and if not satisfied, he may exclude—some categories of subject matter which may be technically competent, yet only remotely relevant to an immediate issue.

Here the trial judge conducted extensive inquiry into the status of the appellant at the time of his prior conviction. He heard argument on the effect of the earlier waiver by the Juvenile Court. He satisfied himself that this case was not within Thomas v. United States [13] where this court had barred as a basis for impeachment, proof of an adverse determination in the Juvenile Court in its proceeding against a juvenile. Thereupon

8. 271 U.S. 494, 497, 46 S.Ct. 566, 568, 70 L.Ed. 1054 (1926); Johnson v. United States, 318 U.S. 189, 195, 63 S.Ct. 549, 87 L.Ed. 704 (1943); and see Brown v. United States, 356 U.S. 148, 154–155, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958).

9. We refer to D.C.Code § 14–305 (1961), as worded when this case was tried; compare D.C.Code § 14–305 (Supp. IV, 1965).

10. This court has expressly held that the word "crime" as used in the statute includes both felonies and misdemeanors. Indeed the trial judge is foreclosed by the statute from inquiry into the nature of the "crime" or its relevance where the credibility of the witness is sought to be impeached by proof of the conviction. Bostic v. United States, 68 App.D.C. 167, 94 F.2d 636 (1937), cert. denied, 303 U.S. 635, 58 S.Ct. 523, 82 L.Ed. 1095 (1938); and see Campbell v. United States, 85 U.S.App.D.C. 133, 176 F.2d 45 (1949).

11. See, e. g., Grunewald v. United States, 353 U.S. 391, 418–424, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957); cf. Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954).

12. Cf. Herron v. Southern Pacific Co., 283 U.S. 91, 95, 51 S.Ct. 383, 75 L.Ed. 857 (1931).

13. 74 App.D.C. 167, 121 F.2d 905 (1941).

he correctly distinguished that situation from the circumstances here since this appellant had been tried [14] in the District Court after waiver and had been convicted as an adult. The fact of that conviction under our Code [15] accordingly was admissible as "evidence to affect the credit" of the appellant as a witness.

I deem further discussion unnecessary.

14. Pee v. United States, 107 U.S.App.D.C. 47, 51–52, 274 F.2d 556, 560–561 (1959).

15. See note 9, *supra,* cited, to text.