Ronald **BUCHMAN**, Appellant,

v.

Leonard **SEIDEL**, Appellee.

No. 53739.

Supreme Court of Iowa.

Feb. 10, 1970.

Fitzgibbons Brothers, Estherville, and Robert A. Montgomery, Spirit Lake, for appellant.

James, Greer, Nelson & Bertell, Spencer, and Welty & Wilcke, Spirit Lake, for appellee.

MOORE, Chief Justice.

This is an action by a farm worker against his employer for injuries sustained February 28, 1966 while in the course of his employment. Plaintiff's petition alleges defendant failed to provide a safe place to work, failed to provide a connector hose to a gasoline barrel and as a result a gasoline fire started from which plaintiff sustained burns requiring medical and hospital care. Defendant's answer denies the charges of negligence and affirmatively alleges plaintiff's damages were "the direct proximate result of plaintiff's own negligence, said negligence consisting of lighting or attempting to light a cigarette after the plaintiff had spilled gasoline on or about his clothing." Plaintiff has appealed from judgment on jury verdict in favor of defendant. We, like the parties, disregard the fact defendant died shortly before trial time and his wife as executrix has been substituted as the named defendant.

Plaintiff asserts the trial court erred in (1) defining contributory negligence in instruction 7 as "negligence on the part of a person contributing in any way or in any degree directly to the injury of himself or his property", (2) submitting instruction 23 regarding impeachment based on plaintiff's admission of a felony conviction, made on direct examination.

In view of the issues presented on this appeal, only a brief statement of facts is necessary. Plaintiff, age 19 when the accident took place, had lived on a farm and was familiar with farm work and machinery. He testified on direct examination he had entered a plea of guilty to forgery, was sentenced to ten years in the Men's Reformatory at Anamosa, was pa-

roled and his parole agent helped him to get the job working on defendant's farm. He started working in November, 1965. He stated defendant's John Deere tractor was difficult to start because a bearing was out of the starter, defendant helped him start it on February 28, 1966 and then went to another part of the farm. Plaintiff drove the tractor out of the shed to near a gasoline barrel which was on a high stand and to which a hose was usually connected and used to fill the tractor. The hose had been removed a few days before and taken to a water tank. Plaintiff to fill the tractor, used a five-gallon can which he held under the spigot which was higher than his head. In doing so some of the gasoline spilled on his clothing. Plaintiff's testimony includes:

"Q. Describe to the jury how you filled that five-gallon can? A. Well, I had to hold it up underneath the spigot. Turn the spigot on. Then I held it as close as I could. Then I shut the spigot off. Set it down to rest my arms, and picked it up and poured it into the tractor. And emptied the can. Took the funnel out. The lid had shaken off the tractor. And fell down on the ground. I picked it up and was going to put it back on. I got about half-way on and I caught fire somehow. That's the last I remember of it.

"Q. Were you smoking? A. No."

The tractor tank was about level with plaintiff's head. After the upper part of his clothing caught fire plaintiff rolled on the ground until Mrs. Seidel heard his call for help, came out of the house and put the fire out with a fire extinguisher. Plaintiff suffered serious burns, which required medical and hospital care.

On cross-examination plaintiff, as abstracted in the record, stated: "On the day of the incident he was dressed with one pair of coveralls on, an insulated sweatshirt, a shirt and a tee-shirt. The sweatshirt had a hood on it with two pockets. The coveralls also had six pockets. There were two breast pockets, two front hip

pockets and two rear hip pockets. There was one pocket on the shirt. The coveralls and sweatshirt were equipped with zippers. He kept the cigarettes that day in his shirt pocket which was the breast pocket inside the coveralls. The cigarette lighter was located in the front hip pocket of his coveralls on the right side. He does not remember if he had anything else in that pocket. He may have had a few bolts, nails or something he picked up around the farm. He had a pair of pants under the coveralls."

Defendant was deceased at trial time. The only other testimony regarding the accident itself was that of his widow. She testified she first saw plaintiff after the fire standing south of the house. Plaintiff had pulled the sweatshirt off and it was lying on the ground. She there extinguished the fire. Her husband arrived soon thereafter and took plaintiff to the hospital. A few minutes later she went to the gas barrel, shut the tractor off and noticed plaintiff's lighter and cigarettes on the ground near the tractor. She observed no evidence of singeing or burning near or on the tractor itself. Plaintiff on previous occasions had been warned about his smoking.

■ I. The trial court in instruction 9 set out three propositions which plaintiff was required to prove, namely defendant's negligence, proximate cause and damage. The jury was told if they found plaintiff had established these propositions then they should proceed to determine the amount of plaintiff's recovery.

Instruction 15, substantially uniform instruction 3.23, set out the applicable law regarding defendant's affirmative defense that plaintiff was contributorially negligent. It included this paragraph. "If you find the plaintiff entitled to recover, then you should give consideration to the defense of contributory negligence in mitigation of damages."

As argued by defendant-appellee it seems evident from the verdict for defendant the

question of mitigation of plaintiff's damages was never reached by the jury. If so then error, if any, in instruction 7 would be without prejudice. We prefer however to consider plaintiff's assigned error regarding that instruction.

Instruction 7 sets out definitions of negligence and reasonable care and caution and then states: " 'Contributory negligence' is negligence on the part of a person contributing in any way or in any degree directly to the injury and damage of himself or his property."

As we point out in Schultz v. Gosselink, 260 Iowa 115, 120, 148 N.W.2d 434, 437, and Matuska v. Bryant, 260 Iowa 726, 739, 150 N.W.2d 716, 724, prior to the effective date of Code section 619.17, a claimant was required to plead and prove his freedom from negligence which contributed in any way or in any degree directly to the accident.

Code section 619.17 provides: "Contributory negligence—burden. In all actions brought in the courts of this state to recover damages of a defendant in which contributory negligence of the plaintiff, actual or imputed, was heretofore a complete defense or bar to recovery, the plaintiff shall not hereafter, have the burden of pleading and proving his freedom from contributory negligence, and if the defendant relies upon negligence of the plaintiff as a complete defense or bar to plaintiff's recovery, the defendant shall have the burden of pleading and proving negligence of the plaintiff, if any, and that it was a proximate cause of the injury or damage. As used in this section, the term 'plaintiff' shall include a defendant filing a counterclaim or cross-petition, and the term 'defendant' shall include a plaintiff against whom a counterclaim or cross-petition has been filed."

Rule 97, Rules of Civil Procedure, which has remained unchanged since being adopted in 1943, provides: "Negligence; mitigation. In an action by an employee against an employer, or by a passenger

against a common carrier to recover for negligence, plaintiff need not plead or prove his freedom from contributory negligence, but defendant may plead and prove contributory negligence in mitigation of damages."

Plaintiff argues section 619.17 applies to rule 97 and therefore instruction 7 was erroneous. In other words he claims the established law under rule 97 was changed by section 619.17. Like the trial court, we do not agree.

Code section 619.17 is specifically limited to the question of liability where "the defendant relies upon negligence of the plaintiff as a complete defense or bar to plaintiff's recovery." It applies only to the question of causation of plaintiff's injury and damages. Rule 97 is limited to the question of the amount to be allowed after liability is found. Erickson v. Erickson, 250 Iowa 491, 495, 496, 94 N.W.2d 728, 730; Oestereich v. Leslie, 212 Iowa 105, 114, 234 N.W. 229, 233.

The trial court did not err in giving the definition of contributory negligence as it relates to the doctrine of mitigation of damages.

II. Code section 622.17 provides: "A witness may be interrogated as to his previous conviction for a felony. * * *." On direct examination plaintiff admitted such a conviction.

Instruction 23 given by the trial court states: "The plaintiff has admitted he has previously been convicted of a felony.

"This is one of the recognized methods of impeaching a witness and discrediting his testimony, and should be considered for no other purpose. It is for the jury to say whether a witness has been successfully so impeached. You may disregard the testimony of an impeached witness, but are not bound to do so, and you should not do so if the testimony is corroborated by other credible evidence, or if for any other reason, you believe such testimony to be true. The credit and weight of the testimony of the witnesses are to be determined by the jury alone, in view of all of the evidence, and all of the facts and circumstances of the case."

Plaintiff argues defendant made no attempt to impeach him, his testimony had not been controverted and the trial court erred in giving instruction 23 on its own motion and over plaintiff's objections.

In State v. Anderson, Iowa, 159 N.W.2d 809, 812, 813, after reviewing section 622.17 and our prior holdings, we held it matters not who asks the prior felony conviction question and that where such evidence is shown the trial court must give an instruction limiting consideration thereof to impeachment.

Our holding in State v. Anderson, supra, defeats plaintiff's contentions made in his second assigned error.

Affirmed.

All Justices concur except RAWLINGS, J., who concurs specially.

RAWLINGS, Justice (concurring specially).

The record before us discloses plaintiff was, in 1965, convicted of forgery and placed on probation. This was a relatively recent conviction involving honesty and integrity. Furthermore, this past record was not revealed by defendant, being self-exposed by plaintiff during presentation of his testimony in chief.

Under these circumstances I concur in the result but again deem some observations appropriate with regard to Division II of the majority opinion. See dissent, State v. Hardesty, 261 Iowa ——, 153 N.W.2d 464, 469.

In Luck v. United States, 121 U.S.App.D. C. 151, 348 F.2d 763, defendant was convicted and on appeal argued, inter alia, introduction of evidence disclosing his prior felony conviction was error since it was obtained when he was a juvenile. Although

the court agreed that conviction of a juvenile, tried as an adult, could be used to impeach his credibility, the position taken by the government that the prosecution is *always* entitled to use a conviction for that purpose was rejected. In so holding the court based its decision on this District of Columbia statute, (14 D.C. Code section 305), which is typical of those in many jurisdictions, but clearly broader than section 622.17, Code of Iowa, 1966: "No person shall be incompetent to testify, in either civil or criminal proceedings, by reason of his having been convicted of crime, but such fact may be given in evidence to affect his credit as a witness, either upon the cross-examination of the witness or by evidence aliunde; and the party cross-examining him shall not be concluded by his answers as to such matters."

With regard to this statute the court said, loc. cit., 348 F.2d 767–768: "Section 305 is not written in mandatory terms. It says, in effect, that the conviction 'may,' as opposed to 'shall,' be admitted; and we think the choice of words in this instance is significant. The trial court is not *required* to allow impeachment by prior conviction every time a defendant takes the stand in his own defense. The statute, in our view, leaves room for the operation of a sound judicial discretion to play upon the circumstances as they unfold in a particular case. There may well be cases where the trial judge might think that the cause of truth would be helped more by letting the jury hear the defendant's story than by the defendant's foregoing that opportunity because of the fear of prejudice founded upon a prior conviction. There may well be other cases where the trial judge believes the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility."

Although the court in Luck, supra, referred to some elements which should be employed as a guide by trial judges in the exercise of their discretion, a full explanation of those factors awaited future decision.

On appeal in Gordon v. United States, 127 U.S.App.D.C., 343, 383 F.2d 936, defendant contended trial court abused its discretion in allowing the government to impeach his credibility by showing prior convictions. In an opinion authored by then Circuit Justice, now Supreme Court Chief Justice, Warren E. Burger, the court affirmed defendant's conviction on the premise he had failed to present the issue to the trial judge in the manner contemplated by Luck. However, some further observations with regard to the Luck decision were deemed necessary. In that direction Justice Burger first reiterated the basic rationale of the "Luck doctrine" and pointed out, "The impact of criminal convictions will often be damaging to an accused and it is admittedly difficult to restrict its impact, by cautionary instructions, to the issue of credibility." These guidelines were then set forth for use by trial judges, in the exercise of discretion, regarding exclusion or admission in evidence of a prior conviction for purpose of impeachment: "In considering how the District Court is to exercise the discretionary power we granted, we must look to the legitimate purpose of impeachment which is, of course, not to show that the accused who takes the stand is a 'bad' person but rather to show background facts which bear directly on whether jurors ought to believe him rather than other and conflicting witnesses. In common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity. Acts of violence on the other hand, which may result from a short temper, a combative nature, extreme provocation, or other causes, generally have little or no direct bearing on honesty and veracity. A 'rule of thumb' thus should be that convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not; traffic violations, however serious, are in the same category. The nearness or remoteness of the prior conviction is also a factor of no small importance. Even one

involving fraud or stealing, for example, if it occurred long before and has been followed by a legally blameless life, should generally be excluded on the ground of remoteness.

"A special and even more difficult problem arises when the prior conviction is for the same or substantially the same conduct for which the accused is on trial. Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.' As a general guide, those convictions which are for the same crime should be admitted sparingly; one solution might well be that discretion be exercised to limit the impeachment by way of a similar crime to a single conviction and then only when the circumstances indicate strong reasons for disclosure, and where the conviction directly relates to veracity.

"Of course, there are many other factors that may be relevant in deciding whether or not to exclude prior convictions in a particular case. * * * One important consideration is what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions. Even though a judge might find that the prior convictions are relevant to credibility and the risk of prejudice to the defendant does not warrant their exclusion, he may nevertheless conclude that it is more important that the jury have the benefit of the defendant's version of the case than to have the defendant remain silent out of fear of impeachment." 383 F. 2d 936, 940–941.

Evans v. United States, 130 U.S.App.D. C. 114, 397 F.2d 675 was also authored by Chief Justice Burger. There the court further clarified the "Luck doctrine" by holding that the tests stated above are relevant only after a threshold burden of demonstrating the peculiar need for the defendant's testimony has been met. In affirming defendant's conviction, because he did not make any affirmative showing of why

there was a special need for his testimony to the trial judge, Justice Burger pointed out: "The defense must show how and why this case calls for a discretionary 'exemption' from the impeachment permitted by statute. Nor, by the same token, will merely stating that it is important for the defendant to testify be sufficient to meet this burden." 397 F.2d 675, 679.

In developing the "Luck doctrine" the Circuit Court relied heavily on the Model Code of Evidence and the Uniform Rules of Evidence. Both the Model Code [A.L.I. Model Code of Evidence, rule 106, (1942)] and the Uniform Rules [Uniform Rules of Evidence, rule 21, 9A U.L.A. 607 (1965)] limit the use of prior convictions to impeach a defendant's credibility in two ways: First, they allow impeachment of credibility only by convictions for crimes involving "dishonesty or false statement." Second, both further limit the use of such convictions by providing that they may be introduced against an accused only if he first introduces evidence solely for the purpose of supporting his own credibility. In Luck the court also noted Professor McCormick's suggestion that, "On balance it seems that to permit * * * one accused of crime to tell his story without incurring the overwhelming prejudice likely to ensue from disclosing past convictions, is a more just, humane and expedient solution * * *." McCormick, Treatise on Evidence, page 94.

Other cases disclosing adoption of a doctrine similar to Luck v. United States, supra, are United States v. Palumbo, (2 Cir.), 401 F.2d 270; United States v. Hildreth, (4 Cir.), 387 F.2d 328; United States v. Sternback, (7 Cir.), 402 F.2d 353; State v. Motley, 199 Kan. 335, 430 P.2d 264; and State v. Coca, 80 N.M. 95, 451 P.2d 999. See also Schaefer, The Suspect and Society, page 68, N.W. U. Press. 1967.

As aforesaid I concur in the result but respectfully submit this court should henceforth adhere to the principles set forth in Luck, supra, and other authorities cited above.