Leonard L. Finz, J.
On this motion, the defendant seeks a prospective ruling to limit the District Attorney in utilizing the prior conviction record of the defendant for impeachment purposes during the trial. The troublesome and pressing issue that emerges is the extent to which the past criminal transgressions of a defendant can be revived and presented to a jury should the defendant elect to defend himself against the current charges by testifying on his own behalf.
The procedure, inspired by the recent pronouncement of the Court of Appeals in People v. Sandoval (34 N Y 2d 371) must, therefore, be analyzed to determine the ultimate decision to be reached — what prior crimes, if any, could properly be surfaced to attack the credibility of the defendant.
As a pretrial procedure designed to protect the constitutional rights of a defendant, the name of a Sandoval hearing, it would appear, can now be added to the illustrious list of constitutional safeguards joining such company as Miranda, Wade, Huntley and others.
In the instant matter, the defendant faces trial for robbery in the first degree, a class B felony, conviction of which would subject him to a mandatory term of imprisonment with a possible maximum of 25 years. He has nine prior convictions, four of which are drug convictions and three gambling convictions included in that total.
What then is the special formula to be employed by a Trial Judge in resolving an issue that has plagued and is continuing; to plague judicial discretion in order to determine its proper direction?
An examination of some of the major cases on the subject is necessary toward an ultimate decision that would be consistent with justice.
In Sandoval the Court of Appeals, after much discussion of the cases on the subject, concluded that the resolution of this issue must rest with the Trial Judge preferably for a determination in a pretrial procedure such as the one before this court. In attempting to set forth criteria and guidelines for the proper exercise of discretion in such instances, the court stated the following (p. 376): “ From the standpoint of the prosecution, then, the evidence should be admitted if it will have material *860 probative value on the issue of defendant’s credibility, veracity or honesty on the witness stand. From the standpoint of the defendant it should not he admitted unless it will have such probative worth, or, even though it has such worth,, if to lay it before the jury or court would otherwise be so highly prejudicial as to call for its exclusion. The standard — whether the prejudicial effect of impeachment testimony far outweighs the probative worth of . the evidence on the issue of credibility — is easy of articulation but troublesome in many cases of application.” [Emphasis supplied.]
Hence, two countervailing forces, each exerting its influence on the conscience of the court, come forward in its quest for a sound base in determining the exercise of proper discretion. On one side is the desirability of admitting prior convictions so that the jury will be able to assess the degree of credence to be given to the. testimony of the defendant, and on the other, the firm recognition by the court that to permit the impeachment of the credibility of the defendant by such device is to invite undesirable prejudice in the minds of the jury.
An uncomfortable ambivalence is created, as the court well recognized in its succeeding statement (p. 376): “At the threshold it must be recognized as inevitable, and thus not determinative, that evidence of prior criminal, vicious or immoral conduct will always be detrimental to the defendant. * * * Will the testimony to be elicited in cross-examination have a disproportionate and improper impact on the triers of fact? Will the apprehension of its introduction undesirably deter the defendant from talcing the stand and thereby deny the Jury or court significant material evidence? ” [Emphasis ' supplied.]
One of the most significant aspects of Sandoval is eloquently expressed in the (p. 378) “ recognition of the principles underlying broadened discovery in criminal procedure and a growing awareness that there may be undue prejudice to a defendant from unnecessary and immaterial development of previous misconduct.”
‘ ‘ Trial court discretion ’ ’ becomes the common thread joining all cases on the subject of the instant application. In this regard, it is interesting to observe how attitudes in this area have changed through the years. In an early case decided in 1893, dealing with the introduction of evidence that the defendant was guilty of adulterous conduct, the court pronounced the exercise of discretion thusly: “It is urged that this evidence should have been excluded, because it tended to implicate the *861 defendant’s wife, who was a witness for him, and thus to impeach her in an unauthorized way before the jury. But any apprehended misuse of this species of evidence may always be avoided by asking and obtaining an instruction to the jury, that it is only to be considered in determining the credibility of the witness who makes the confession.” (People v. Webster, 139 N. Y. 73, 84.)
In view of the anticipated caveat to the jury, the impeachment evidence was held to be admissible. It is interesting to note that at the turn of the century adultery was considered so heinous as to bear on the credibility of the defendant while he was on trial for murder. Today, such conduct, although still considered immoral, would scarcely cause the lifting of an eyebrow.
Realistically, however, to suggest that an instruction to a jury, despite its articulate quality, would result, without risk, in á juror drawing a mental curtain on the fine line segregating impeachment testimony from the possible prejudice it could produce, is a nuance of human nature that eludes this court.
This theme of avoidance of undue prejudice is not novel. The subject was,-indeed, treated at length in Luck v. United States (348 F. 2d 763). There, Circuit Judge McGowan writing for the majority, stated (p. 769): “In exercising discretion in this respect, a number of factors might be relevant, * * * above all, the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant’s story than to know of a prior conviction. The goal of a criminal trial is the disposition of the charge in accordance with the truth. The possibility of a rehearsal of the defendant’s criminal record in a given case, especially if it means that the jury will be left without one version of the truth, may or may not contribute to that objective.”
Continuing in this vein in Gordon v. United States (383 F. 2d 936), Circuit Judge, and now Chief Justice, Warren Burger stated (p. 939): “ The standard to be applied by the District Judge was stated in terms of whether he ‘ believes the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility.’ The impact of criminal convictions will often be damaging to an accused and it is admittedly difficult to restrict its impact, by cautionary instructions, to the issue of credibility. The test of Luck, however, is that to bar them as impeachment the court must find that the prejudice must ‘ far outweigh ’ [emphasis supplied] the probative relevance to credibility, or that even if relevant the ‘ cause of truth would be helped more by letting the jury hear the *862 defendant’s story than by the defendant’s foregoing that opportunity because of the fear of prejudice founded upon a prior conviction. ’ ”
Further in the same case (p. 940): “ Even though a judge • might find that the prior convictions are relevant to credibility and the risk of prejudice to the defendant does not warrant their exclusion, he may nevertheless conclude that it is more important that the jury have the benefit of the defendant’s version of the case than to have the defendant |remain silent out of fear of. impeachment.” [Emphasis supplied.]
The concern of the court (p. 941) in the foregoing cases is the same as that of the Court of Appeals in Sandoval: “We are well aware that these are not firm guidelines which can be applied readily as though they were part of the structure of the Federal Rules of Criminal Procedure; the very nature of judicial discretion precludes rigid standards for its exercise; we seek to give some assistance to the trial judge to whom we have assigned the extremely difficult task of weighing and balancing these elusive concepts. Surely, it would be much simpler if prior convictions of an accused were totally admissible or totally excludable as impeachment; but in the face of an explicit, unambiguous statute allowing use of prior convictions and the holding in Luck we have little choice. The lesser step has besen taken in Luck saying that the statute is to be read as permitting a discretion in the trial judge.” [Emphasis supplied.]
Having in mind the list of cases issuing out of the Supreme Court of the United States, some under Chief Justice Burger, expressing a philosophy greatly protective of the rights of defendants in this regard, can it be said that there are no signposts indicating the direction in which the court should move on this issue?
Since there appears to be reluctance to part with this rule of evidence, the courts have sought to find a rationale which will permit its continuance where directly relevant, namely, on the issue of credibility. In United States v. Palumbo (401 F. 2d 270, 274) it was said: “ More recently, Luck has been construed to allow impeachment of a defendant by convictions involving fraud or stealing, which ‘ are universally regarded as conduct which reflects adversely on a man’s honesty and integrity.’ Gordon v. United States, 383 F. 2d 936, 940 (D. C. Cir. 1967).”
It is noteworthy and significant that Palumbo never took the stand. Is it too much to speculate that the court’s decision to permit cross-examination at least as to some of Palumbo’s'past record may have inhibited his appearance as a witness in Ms *863 own behalf, thereby depriving him de facto of the constitutional right to relate to the jury exculpatory conduct on his part?
Following in the track of Luck and Gordon (supra) is United States v. Puco, (453 F. 2d 539, 542, 543) where the court stated: “ Reference to a defendant’s criminal record is always highly prejudicial. The average jury is unable, despite curative instructions, to limit the influence of a '/defendant’s criminal record to the issue of credibility. * * While there is considerable uncertainty as to what crimes, by reason of their nature, may be considered to be highly probative of lack of veracity, we believe that a narcotics conviction has little necessary bearing on the veracity of the accused as a witness.” (But see United States v. McIntosh, 426 F. 2d 1231.) (Emphasis supplied.)
The scarcity of cases on the appellate level in New York was pointed out by Mr. Justice Shapiro in People v. Duffy (44 A D 2d 298) a case of very recent origin, although it predates Sandoval by several months. In Duffy the court makes a scholarly review of the cases on this subject, pointing first of all to the statute (CPL 60.40, subd. 1) which allows a prosecutor to ask, if he does so “ properly ”, if he, the defendant, has been convicted of a “ specific offense ”. On reviewing the cases and quoting from them at length, mainly from the Luck and Gordon opinions, the Appellate Division stated the following (p. 305): “ On appropriate application, made either at or prior to trial, and in the exercise of a sound discretion, the trial court should determine whether an applying defendant has sustained the burden, which should be his, of demonstrating that the prejudice involved in permitting into evidence proof of prior convictions or criminal acts so far outweighs the probative value of such proof for impeachment purposes that the proof should not be received. Hence, we today announce that to be the applicable law.” [Emphasis supplied.]
And, again, we are left with the dilemma created by a statute that permits the use of prior convictions for cross-examination against the backdrop of lofty decisional law highly suggestive of proceeding to its application with measured caution — all in the stricture of “judicial discretion”. Unfortunately, however, little relief is provided the Trial Judge, to whom the application is addressed and who must weigh in the two pans of the scale the pressures exerted by credibility on the one hand and prejudice on the other. If one were to construct such a scale, with the lowliest offense on the one end and murder -most foul on the other, where would one place the fulcrum, the point of balance, which is the present alleged crime of the defendant? And how *864 does one, in truth, assess the weight to be placed on each side of the scale?
Once again, we observe that the “balance” issue is the overriding theme in determining the proper application of judicial discretion. So, too, in People v. Schwartzman (24 N Y 2d 241, 247) does the Court of Appeals proclaim its “ balance ?’ position: ‘ ‘ The rules governing the admissibility of evidence of other crimes represent a balance between the probative value of such proof and the danger of prejudice which it presents to an accused. When evidence of other crimes has no purpose other than to show that a defendant is of a criminal bent or character and thus likely to have committed the crime charged, it should be excluded.” (Emphasis supplied.)
Again, we must return to Sandoval (supra) and its pronouncement of (p. 378) “ undue prejudice to a defendant from unnecessary and immaterial development of previous misconduct ”.
As such, we now focus upon this defendant, whose prior criminal record consists for the most part of narcotics and gambling convictions. Would not the knowledge gained by a jury that the defendant has trafficked in narcotics be sufficient to create in the mind of a juror a prejudice, or even a fury which would eliminate for him any possibility of fair consideration or a fair trial? In a time when such a crime is considered so serious as to be punishable by a sentence of life imprisonment, how can a Judge instruct a jury, with any degree of assurance that his direction will be adhered to, that the evidence that this man was formerly convicted of selling narcotics or gambling is only to be considered as bearing on his credibility?
This, it appears to this court, is the threshold theme, especially in the light of all constitutional safeguards that have evolved toward the protection of the basic rights of all defendants. It is in furtherance of a conscious effort on the part of those whose duty it is to administer justice to weigh the factors involved in the protection of society and the preservation of the rights of the individual, knowing full well that, society as a whole can survive the impact of many calamities but that the individual is, at best, but a frail mortal, easily destroyed and impossible of resurrection, that energizes this thrust toward justice.
This court, in its search for fairness, reaches the conclusion that only those prior- convictions that bear directly upon the issue of the defendant’s credibility be admitted into evidence. The prior crimes fitting this narrow description should be limited to perjury, fraud and deceit, larceny by misrepresentation, *865 and other closely related crimes which have at their very core the prior dishonest or untruthful quality of the defendant. The danger of prejudice and the fear by the defendant that he might have to remain silent in his own defense are so great as to warrant no other just determination than the total and absolute exclusion of his prior criminal record short of that which focuses precisely upon his credibility, veracity or honesty.
The gravamen of this decision rests with the resolving of all doubts in favor of the individual defendant. As such, should the trial court’s decision to exclude prior convictions be incorrect, the defendant, at best, receives but a small measure of assistance in resisting the present charges against him. Conversely, however, should the decision to admit prior convictions be an improvident one, the damage wrought could be crushing and irreversible in the minds of a jury. The alternatives leave but one conclusion — that is, that society can better withstand the result of a “ close ” decision against it than can the “ frail mortal ” defendant.
Justice, in this context, can neither be computerized, nor punched out by some mechanical brain in calibrating the exact balance which could be determined solely on the basis of raw data derived from general guidelines. This being so, and recognizing candidly the impossibility of any specific judicial criteria that could chart wisely the proper path in the pursuit of judicial discretion, the offered alternative, while not the panacea, more closely parallels the spirit of justice than its present counterpart. To this extent, Sandoval meets this issue brilliantly when it states that prior convictions (p. 376) “ should not be admitted unless it will have * * * probative worth ’ ’ (on the issue of defendant’s credibility, veracity, or honesty).
In Sandoval the theme of weighing and balancing is constant. In that atmosphere, the instant decision falls squarely upon the Sandoval scales and is consistent with the sound tone and humane philosophy expounded therein.
Additionally, the major constitutional issue raised by the gagging of the defendant, who otherwise would speak out in his own defense, but for fear of prosecutorial cross-examination of prior crimes, is so offensive to our basic sensitivity for fairness as to warrant immediate redress and correction.
In an evolutionary sense, the former harsh common-law doctrine, now codified, is eroding through judicial interpretation, approaching its inevitable demise, and leaving in its wake a residue of fairness. Stated another way: Luck (supra) has turned the key. Duffy (supra) has opened the door. Sandoval *866 (supra) has invited yon in, and Mallard, in the light of the foregoing, may permit you to stay.
Accordingly, it is the judgment of this court, in the posture of this opinion, that the entire prior conviction record of the defendant is suppressed for purposes of cross-examination should he choose to speak out in defense of the crime for which he is now charged.