**Allen SIDNEY, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 565.**

Supreme Court of Alaska.

Dec. 13, 1965.

Joe P. Josephson, of Josephson & Strachan, Anchorage, for appellant.

John K. Brubaker, Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

The gist of this appeal raises questions pertaining to the State's introduction into evidence of records of appellant's prior criminal convictions. We consider it necessary to initially refer in some detail to the trial proceedings so that the factual context leading up to the admission into evidence of the judgments of conviction will be more readily understood and our disposition of these issues clarified.

Appellant Allen Sidney was indicted for the crime of assault with a dangerous weapon allegedly committed August 17, 1964, by stabbing Johnson Scott with a

knife in violation of AS 11.15.220.[1] After trial by jury appellant was found guilty of assault with a dangerous weapon and was sentenced to serve a five year term of imprisonment.[2] It is from this sentence that appellant appeals.

During the impanelling of the jury, trial counsel for appellant disclosed to the prospective jury panel that appellant had been previously convicted and incarcerated. The first disclosure occurred during counsel for appellant's voir dire examination of juror DeArmon. The juror was asked the following questions by appellant's counsel:

Will the fact that the defendant has been in the penitentiary and will tell you from the witness stand that he has, from this Court here years ago, would that have any tendency to prejudice you against him? Could you overlook that completely and try this case on his reputation and his character and the facts since that time? * * * I take it then that * * * none of you have spoken up, you would not be prejudice [sic] against him by reason of the fact that he did do a term in the penitentiary at McNeil Island from this very city of Anchorage here? If you found and believed that he had repented

from that and was doing right, you would not hold that against him, would you?

Substantially the same type of interrogation took place during counsel for appellant's voir dire examination of two subsequent prospective jurors.[3]

The next reference to appellant's criminal record occurred during his counsel's opening statement to the jury. At this point counsel said:

We will also show that my client here was a convict and served in the penitentiary. He will show that he became a member of the religious organization there in the penintentiary [sic].

After the prosecution had rested its case in chief, appellant elicited testimony from three defense witnesses as to his good reputation for truth and veracity.[4] Appellant then testified in his own behalf. During appellant's direct examination, the following took place:

Q And had you—Allen, had you prior to that time served a sentence in the penitentiary?

A Yes sir.

Q And what year did you receive that sentence?

A In 1958, sir. December 17th, yes.

1. AS 11.15.220 provides:

   *Assault with dangerous weapon.* A person armed with a dangerous weapon, who assaults another with the weapon, is punishable by imprisonment in the penitentiary for not more than 10 years nor less than six months, or by imprisonment in jail for not more than one year nor less than one month, or by a fine of not more than $1,000 nor less than $100.

2. At the trial appellant was represented by Bailey Bell, court appointed counsel. Mr. Josephson was subsequently appointed to represent appellant in regard to this appeal. Appellant admitted knifing Scott but claimed he acted in self defense after Scott had first struck him. The principal conflicts in evidence revolved around the location of the stabbing and whether or not appellant acted in self defense at the time in question.

3. Juror Marie Cohen was asked by appellant's counsel the following question:

   Do you feel that the fact that he had had some trouble and served some time

in the penitentiary, do you think you could still treat him just the same if he had reformed from that and living right, you could treat him just as good as if that had never happened?

During the voir dire examination of juror Gloria Dickenson, appellant's counsel asked:

You're willing to forgive a person who has made a wrongful step and has gone to the penitentiary for it and paid his debt to society and come home and tried to live right, but you're willing to forgive him for it, aren't you?

4. Officer William L. Fox of the Anchorage City Police was asked if he knew what general reputation appellant had as to truth and veracity. The officer testified "As far as I know, he was known to be truthful." Reverend Boyd E. Rodgers testified that appellant bore a good reputation for truth and veracity. Reverend Ernest Mitchell Howard also testified that appellant's reputation for truth and veracity was a "very good one."

Q December 1958?

A Yes sir.

Q And after you got out of the penitentiary did you come right back to Anchorage?

A Yes sir.[5]

During the prosecution's cross-examination of appellant, copies of four judgments of conviction were introduced into evidence over appellant's objections. At no time prior to offering these judgments of conviction into evidence did counsel for the prosecution ask appellant any question as to his prior criminal record.[6] The four judgments of conviction indicate that appellant had been convicted of the crimes of robbery in 1958, of rape in 1957, of possession of an unregistered firearm in 1957, and of robbery in 1944.[7] To each of these four exhibits appellant's counsel objected on the grounds of lack of competency, relevancy, materiality, and foundation.[8]

It is the introduction into evidence of these four judgments of conviction which appellant asserts as error. For reasons which will hereafter be explained, we have concluded that it was not error for the trial court to have ruled that the four exhibits were admissible.

Appellant's argument centers primarily on the provisions of Civ.R. 43(g) (11) [b]. This rule of procedure provides:[9]

> *Impeachment of Adverse Party.* A witness may be impeached by the party

---

5. The following exchange between appellant and his counsel also occurred during appellant's direct examination:
   Q Are you trying, Allen, to live down the past where you have had bad luck and got a sentence?
   A Yes sir. I started that in McNeil Island, Washington, sir. I got converted on McNeil Island.

6. Note: As to each of the judgments of conviction the prosecution did ask appellant, in the process of identifying the exhibits, whether or not he was the Allen Sidney referred to in the particular exhibit. Appellant was never asked if he had ever been convicted of a crime.

7. The judgment and commitment in regard to the 1958 robbery conviction showed that appellant received a five year sentence; the judgment and commitment pertaining to the 1957 rape conviction disclosed that appellant was given a three year sentence with all but nine months suspended; as to the 1957 possession of an unregistered firearm conviction, the judgment and commitment reflects that appellant was fined $250.00 and placed on probation for five years; the 1944 copy of minutes (commitment) relating to appellant's robbery conviction also disclosed that appellant had been convicted of burglary in 1936 and had served a period of incarceration under the 1936 burglary conviction.

8. As to Exhibits 5 and 7 counsel for appellant additionally objected to their admission on the grounds of remoteness.
   Note: At one point, in ruling on appellant's objections to one of these exhibits, the trial judge stated that the exhibit was "introduced solely for the purpose of credibility of the witness and as such it is admissible."
   In his instructions to the jury the trial judge said the following in regard to impeachment:
   > The testimony of a witness may be discredited or impeached by showing that he had been convicted of a crime. Prior conviction does not render a witness incompetent to testify, it merely reflects on his credibility. It is the province of the jury to determine what weight, if any, should be given to such prior conviction as impeachment.

9. Civ. R. 43(g) (11) [b] is made applicable to criminal proceedings by virtue of Crim. R. 26(a) and Crim. R. 50(b).
   Crim. R. 26(a) provides in part:
   > *In General.* In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules. The admissibility of evidence shall be governed by Civil Rule 43 and by these rules, or in the absence of rule, by the principles of common law as they may be interpreted by the courts of the state in the light of reason and experience.
   Crim. R. 50(b) provides:
   > *Civil Rules to Apply.* All other provisions of the Rules of Civil Procedure relating to attorneys, regarding applications to the court, stipulations, examining witnesses, counsel as a witness, arguments on motions or hearings, nonresident attorneys, and disbarment and discipline, shall apply to practice in criminal actions in the courts of the state.

against whom he was called by contradictory evidence, or by evidence that his general reputation for truth is bad, or that his moral character is such as to render him unworthy of belief. He may not be impeached by evidence of particular wrongful acts, except that it may be shown by the examination of the witness or the record of a judgment that he has been convicted of a crime.

Appellant contends that the "customary mode of proof" contemplated by Civ.R. 43(g) (11) [b] required the prosecution to first ask him "whether he had ever been convicted of a crime" and that the trial court's failure to adhere to this mode of proof requires reversal by this court.[10] This is the first occasion that we have been asked to answer this precise question.

Under the common law it was established that evidence of prior convictions was inadmissible to show guilt of the defendant. An exception to this general rule occurred when the defendant voluntarily submitted himself as witness. He then became subject to impeachment.[11] At common law it was

also held that proof of an official record, such as a judgment of conviction, had to be established by a certified copy in preference to receiving testimony from a witness as to its contents.[12] Dean McCormick states that this rule of the common law:

[W]as applied in England to proof of records of conviction, so as to preclude the cross-examiner from asking about convictions. This practice still lingers in a few states, but the inconvenience of such a requirement, and the obvious reliability of the answer of a witness acknowledging his own conviction, have led most jurisdictions, by either statute or decision, to permit the proof to be made either by production of the record or a copy, or by the oral statement of the convicted witness himself.[13]

In our jurisdiction Civ.R. 43(g) (11) [b] permits impeachment of a defendant-witness by evidence of prior convictions of crime to be adduced either by examination of the defendant-witness or by the record of conviction.[14]

10. Appellant contends that if the witness admits the conviction, then use of the record of conviction would be precluded.

11. Lane v. Warden, Maryland Penitentiary, 320 F.2d 179, 181–182, 185 (4th Cir. 1963).

12. IV Wigmore, Evidence § 1269 at 535 (3d ed. 1940); McCormick, Evidence § 43 at 92 (1954).

13. McCormick, supra note 11 at 92. See IV Wigmore, Evidence § 1270 at 540, 545 (3d ed. 1940), where he states in regard to this common law rule as to proof of prior convictions that:

The result is that three types of rules now obtain in the different jurisdictions:

(1) the requirement of a copy in all cases;

(2) the allowance of an admission on cross-examination of the witness to be impeached, but the requirement of a copy or an abstract when proof is made by another witness,—this rarely by common-law decision, but widely by statute;

(3) the allowance of recollection-testimony either from the witness to

be impeached or from another,—this rarely, and by statute only.

The second form is the only proper one, and now obtains in the majority of jurisdictions.

14. Appellant relies upon People v. Perez, 58 Cal.2d 229, 23 Cal.Rptr. 569, 373 P. 2d 617, 3 A.L.R.2d 946 (1962), and State v. Coloff, 125 Mont. 31, 231 P.2d 343 (1951), in support of his assertion that Civil Rule 43(g) (11) [b] should be construed to require the prosecution to first ask the accused whether or not he has been convicted of a crime before it should be allowed to introduce the record of a judgment of conviction under Rule 43's alternative method of impeachment. The state on the other hand cites several decisions under statutes containing language similar to our Civil Rule 43 where the courts have held that proof of prior convictions may be made alternatively, that is either by examination of the witness or by the record. See Meeks v. United States, 163 F.2d 598, 600, 11 Alaska 378 (9th Cir. 1947); Wright v. State, 38 Ala.App. 64, 79 So.2d 66, 68 (1954); Le Blanc v. State, 95 Okl.Cr. 280, 245 P.2d 134, 137 (1952); State v. Pielow, 141 Wash. 302, 251 P. 586, 588 (1926).

■ We hold that under the provisions of Civ.R. 43(g) (11) [b] it was not error for the lower court to have admitted the judgments of conviction into evidence without first requiring the prosecution to ask appellant whether or not he had been convicted of a crime.

■ We further hold that the judgments of conviction were also admissible under that portion of Civ.R. 43(g) (11) [b] which provides:

A witness may be impeached by the party against whom he was called by contradictory evidence, * * *.

Under this aspect of Civ.R. 43, the judgments of conviction (other than the 1958 robbery conviction) were admissible to contradict the inference arising from appellant's testimony on direct examination, to the effect that he had only been convicted on one prior occasion.[15]

Appellant also urges that the lower court erred in allowing the judgments of conviction to be received into evidence because of the prosecution's failure to comply with Civ.R. 44(b) (2)'s conditions precedent for the admission of official records. Crim.R. 26(e) provides:

*Proof of Records.* An official or business record or an entry therein or the lack of such a record or entry may be proved in the same manner as in civil actions.

The admission of official records in civil actions is governed in part by Civ.R. 44(b) (2) which reads:

*Conditions of Admitting Official Records.* Any writing admissible under subdivision (1) shall be received only if the party offering such writing has delivered a copy of it or so much thereof as may relate to the controversy, to each adverse party a reasonable time before trial, unless the court finds that such adverse party has not been unfairly surprised by the failure to deliver such copy.

■ We find no merit in appellant's argument that the four judgments of conviction were erroneously received into evidence due to the prosecution's failure to comply with the requirements of Civ.R. 44(b) (2). We mentioned earlier the grounds upon which appellant objected to the introduction of these exhibits at the trial.[16] Examination of the record reveals that appellant did not, at any time during the trial, object to the admissibility of the judgments of conviction on Civ.R. 44 grounds. We have previously held that we will not consider on appeal any objection which was not raised at the trial level.[17] Furthermore, we find nothing in the record to indicate that appellant was "unfairly surprised" by any failure on the prosecution's part to deliver to defendant copies of the judgments of conviction a reasonable time before trial.

Appellant further contends that the admission of the judgments of conviction was so prejudicial as to require the setting aside of his conviction. What we have said in regard to appellant's first two contentions is applicable here and controlling. The chief thrust of appellant's argument at this point is that the impact upon the jury flowing from this documentary evidence of appellant's prior criminal convictions was prejudicially greater than what would have occurred if the trial court had initially limited the prosecution under Civ.R. 43 to an examination of appellant while on the witness stand.[18]

---

15. Christy v. United States, 261 F.2d 357, 360–361, 17 Alaska 107 (9th Cir. 1959).

16. Page 860, supra.

17. Mitchell v. Knight, 394 P.2d 892, 896–897 (Alaska 1964); Lumbermens Mut. Cas. Co. v. Continental Cas. Co., 387 P.

2d 104, 109 (Alaska 1963); Pollastrine v. Severance, 375 P.2d 528, 531 (Alaska 1962).

18. In support of this assertion appellant cites State v. Costa, 11 N.J. 239, 94 A. 2d 303 (1953), where at 309 of its opinion the court quotes from State v. Cleve-

■ In addition to our holdings in regard to appellant's first two contentions, we note that the record shows from the very inception of the trial appellant's counsel disclosed to the jury that appellant had been convicted and had served time in the penitentiary.[19] The record also indicates that this information was brought to the jury's attention by appellant's counsel (in substantially the same form) on three additional occasions.[20] And, as indicated previously, appellant on direct examination testified that in 1958 he had been sentenced and served a period of time in the penitentiary.[21] Thus the fact that appellant had suffered at least one prior criminal conviction was well known to the jury before the prosecution attempted to introduce the judgments of conviction during its cross-examination of appellant. Any prejudice to appellant's case arising from the introduction of the judgments of conviction was both lessened by appellant's anticipatory references to a single past conviction and heightened by appellant's, at the least equivocal, attempts to impress the jury that he had only been convicted on one prior occasion. Since we have held that Civ.R. 43 (g) (11) [b] authorizes the use of judgments of conviction and in light of the foregoing, we can find no basis for upsetting appellant's conviction on the urged grounds that the introduction of the judgments of conviction were so prejudicial as to require reversal of his conviction.

■ Appellant's final contention is that the allowance into evidence of the 1957 judgments of conviction of rape and possession of an unregistered firearm was prejudicial error. In support of this argument appellant contends that under Civ.R. 43(g) (11) [b] impeachment of a defendant-witness should be limited solely to crimes involving dishonesty or false statement.

In Anderson v. State [22] this court said, in discussing the question of whether it was proper for the prosecutor to have asked a witness whether he had been convicted of a felony, that:

> As far as we are aware Alaska courts have uniformly permitted the prosecutor to ask a witness the question of whether he had been convicted of a crime.
>
> * * * A rules amendment now in process of adoption will resolve the ambiguity making it clear beyond doubt that a witness may be asked whether he has been convicted of a crime.[23]

This reflects the state of the law as to impeachment at the time appellant's trial took place. Under the wording of Civ.R. 43 and the Anderson case, no limitation exists as to the type of crimes that can be used to impeach a defendant-witness.[24]

The judgment and commitment entered below is affirmed.

land, 6 N.J. 316, 78 A.2d 560, 568, 23 A.L.R.2d 907 (1951), as follows:

The observation that 'A thing in writing carries, particularly with the layman, a weight of its own * * * [and is] a present and constant reminder to the jury of its contents' and ' * * * shears the balance of the oral testimony in the case of the weight it would otherwise have' * * *.

19. Page 859, supra.

20. Page 859, supra.

21. Pages 859, 860, supra.

22. 384 P.2d 669, 673 (Alaska 1963).

23. Civ. R. 43(g) (11) [b] at the time of appellant's trial permitted impeachment by evidence of conviction of "a crime."

24. In regard to appellant's last contention, we refer counsel and the bar to Sup.Ct.R. 53 which provides:

*Proposal of Changes to Rules.*

Any person may propose to the supreme court rules or changes in the rules governing practice and procedure in civil and criminal cases and governing administration of all courts. Such a proposal must be in writing and include a statement of the reasons for the proposed rules or changes. All proposals shall be submitted to the administrative director of courts at Anchorage.

See: Griswold, "The Long View", 51 A.B.A.J. 1017, 1021 (1965).