NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

CORRAL SPORTSWEAR COMPANY,
Respondent.

No. 9185.

United States Court of Appeals
Tenth Circuit.

Oct. 4, 1967.

Rehearing Denied Nov. 15, 1967.

Thomas R. Beech, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, George B. Driesen, Atty., N. L. R. B., were with him on the brief), for petitioner.

Karl H. Mueller, Fort Worth, Tex., (Harold E. Mueller, of Mueller & Mueller, Fort Worth, Tex., was with him on the brief), for respondent.

Before LEWIS and SETH, Circuit Judges, and BRATTON, District Judge.

LEWIS, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order requiring the respondent Company to bargain with the Union [1] earlier certified by the Board as the collective bargaining agent of the Company. The Company's refusal to bargain after certification is admitted and constitutes a violation of section 8(a) (5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158, unless, as the Company here contends, the Board's certification was premised upon an invalid election.

The Corral Sportswear Company is engaged in the manufacture of coats and jackets with a plant located at Ardmore, Oklahoma. In August of 1964, the Union filed a petition for an election among the

---

1. Local 670, International Union of Operating Engineers, AFL-CIO.

Company's employees. Thereafter, the Union and Company entered into a stipulation for Certification Upon Consent Election, which was approved. At the time of the election in question, the Company had 96 employees, of whom 76 were allowed to vote. In October of 1964, the Board conducted an election at which 71 unchallenged ballots were cast, 36 for the Union, and 35 against. During the voting, the Company challenged the ballot of a set-up department employee, and the Union challenged the ballots of two line-girls, a finishing department employee, and the patternmaker. Since the 5 challenged ballots were sufficient in number to affect the result of the election, an investigation was conducted pursuant to section 102.69 of the Board's Rules and Regulations.[2]

■ Upon recommendation of the Regional Director, the Board ordered a hearing to resolve the challenges. The Hearing Examiner, after hearing the evidence, sustained all 5 challenges. The Company's challenge, and 3 of the 4 union challenges were sustained on the grounds that the employees in question were "supervisors" within the meaning of the Act.[3] Under the Act, supervisors are not within the shelter of the organizational provisions to bargain collectively. NLRB v. Edward G. Budd Mfg. Co., 6 Cir., 169 F.2d 571, cert. denied, Foreman's Ass'n of America v. Edward G. Budd Mfg. Co., 335 U.S. 908, 69 S.Ct. 411, 93 L.Ed. 441 (1949). The remaining employee challenged by the Union was the wife of the plant superintendent who did all her work at home rather than at the plant and was found by the Hearing Examiner to lack sufficient community of interest with the other employees in the plant to warrant her inclusion in the bargaining unit.

Based on the one vote majority, the Board certified the Union and denied the Company's petition for reconsideration.

■ The Company first resists enforcement of the Board order through claim of error in the determination that the Union's challenges were valid as leveled against supervisory employees.[4] Although judicial review of this supporting finding by the Board is proper, Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, we must recognize "* * * that of necessity a large measure of informed discretion is involved in the exercise by the Board of its primary function to determine those who as a practical matter fall within the statutory definition of a 'supervisor.'" NLRB v. Swift & Co., 1 Cir., 292 F.2d 561, 563. So viewed we find ample support in the record sustaining the Board's action in refusing to count the votes of those employees challenged by the Union as supervisors.

■■ It is well settled that section 2(11), cited in full in footnote #3, supra, is to be read in the disjunctive and the existence of any one of the indicia listed is sufficient to support a finding that the one possessing it is a supervisor. E.g., Warner Company v. NLRB, 3 Cir., 365 F.2d 435; NLRB v. Edward G. Budd Mfg. Co., supra; NLRB v. Elliott-Williams Co., 7 Cir., 345 F.2d 460. The record shows that the employees in question performed one or more of the tasks which qualify them for supervisor status. They did on occasion exercise authority

2. 29 C.F.R. Sec. 102.69(c) provides that "* * * if the challenged ballots are sufficient in number to affect the results of the election, the regional director shall investigate such objections or challenges, or both. * * *"

3. Supervisory personnel are distinguished from employees in 29 U.S.C. § 152(11) which provides: "The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

4. The Company makes no argument against the validity of the challenge of the patternmaker.

which was more than of a merely routine or clerical nature and required the use of independent judgment. The functions of the challenged employees in question were almost identical to those of certain "floorladies" in the recent case of Brewton Fashions, Inc. v. NLRB, 361 F.2d 8, cert. denied, 385 U.S. 842, 87 S.Ct. 95, 17 L.Ed.2d 75 (1966), where the Board's determination that said floorladies were supervisors was upheld by the Fifth Circuit.[5] We hold the Board's findings that the challenged votes were those of supervisory employees are supported by substantial evidence.

The Company also contends that the election was invalid because, after two of the Union's challenges were allowed, four other unchallenged votes became invalid as a matter of law and consequently the result of the election does not necessarily reflect the will of the employees eligible to vote. This question has some aspects of first impression and requires more particularized consideration.

Prior to the election the Company prepared and submitted a list of its employees which, after the parties had stipulated as to the ineligibility of certain employees to vote because of their supervisory duties, contained a total of 76 voters—1 janitor, 1 patternmaker, 11 cutters, 3 set-up department employees, 3 finishing department employees, 2 shipping department employees, 6 linegirls, and 49 employees performing other work. All voted, as earlier indicated, with 5 challenges made. The Company challenged Pat Wilson, a set-up department employee, as a supervisor; the Union challenged Velma Trent, a finishing department employee, as a supervisor; the Union challenged Myrtha Heartsill and Gladys Roberts,[6] linegirls, as supervisors; and the Union challenged Ruth Wills, the patternmaker.

At a pre-election conference the Union and the Company apparently made an effort to set the ground rules for the determination of eligibility of voters. Our present record abstracts testimony of an occurrence at the conference through the examination by Union counsel of Mr. Simpler, the Company plant manager:

Q. Could it be, Mr. Simpler, that the reason you challenged Pat Wilson or had her challenged at the polls was because you knew she was a strong union sympathizer? A. I definitely— no, sir, that is not true, positively not true, because I did not know that she was a strong sympathizer at that time.

Q. Did you hear any of this testimony here today? A. Yes, sir.

Q. That was the only one that you objected to on the list at the pre-election conference? A. Yes, sir.

Q. Do you recall my taking the position that if she was a supervisor that others were supervisors and that I was either willing to let them all vote or none of them vote? A. I remember that Mr. Brazel, but you did not know the circumstances at our plant at that time.

Q. What was your position on it? A. My position was that that was the only supervisor that we had in the plant.

Q. Did you refuse to let all of these people vote or let none of them vote; what was your action to my suggestion? A. I think that my action was that the supervisors should not vote and those that are not supervisors are eligible to vote.

Springing from this procedural background the Company now contends that if, as the Board found, the two linegirls Heartsill and Roberts were supervisors then the other four unchallenged linegirls

5. Note also from Labor Law Report # 86 for July 21, 1967 * * * "Floorladies who were responsible for teaching and assigning work to 18 other employees were supervisors." Sagamore Shirt Co., dba Spruce Pine Mfg. Co., 1967 CCH NLRB ¶ 21,653.

6. Roberts was made a temporary lead linegirl shortly before the election, and, although former lead linegirls had been stipulated to be supervisors, this incident is not considered to be of determinative significance.

were also supervisors and ineligible to vote. Under these circumstances, so says the Company that once the " * * * Board agent permitted and accepted the challenges as to two members of the class, he was under a positive duty to protect the integrity of the election by challenging or impounding the ballots of the other members of the class until the eligibility of all had been determined."

 Although the Company's contention certainly has initial appeal [7] because of the probability that ineligible votes were cast in the subject election we do not find ultimate legal merit to its argument. We learn from NLRB v. A. J. Tower Co., 329 U.S. 324, 67 S.Ct. 324, 91 L.Ed. 322 that even the *fact* of the ineligible votes determinative of results in an election does not invalidate an election and that the Board need not entertain post-election challenges as a requirement to further the purposes of the Act. This rule is contained in Board Regulation, section 102.69(a). An exception to the general rule of *Tower* exists when the fact of ineligibility is known to the Board's agent or the parties benefiting from such knowledge and the facts are suppressed. The exception is noted by the high court in view of the Board's earlier rulings in the Matter of Beggs & Cobb, Inc., 62 N.L.R.B. 193 and Matter of Hale, 62 N.L.R.B. 1393. In these instances the Board's agent and the Union knew the critical facts but the employer did not. Such is not this case for there is no claim of suppression and no claim that the employer was unapprised of the critical facts.

 It is of course true that the Board's agent was aware of an existent dispute between the Company and the Union as to which employees were supervisors and which were not. This dispute was not limited to the list furnished by the Company under the classification of linegirls and no clear answer to the dispute was dictated by the presentation of the parties. The procedural method to be invoked by the Board to settle a dispute involving supervisory status is a matter falling within the field of administrative expertise and will not be disturbed by this court absent a clear abuse of discretion. In the case at bar all parties had equal knowledge of the issues and it was neither improper nor unusual for the Board to resort to the challenge procedures as a method of resolution. Cf. Angle v. Martin Sacks, Regional Director, 10 Cir., 382 F.2d 655, decided August 28, 1967. The general duty of the Board to supervise the integrity of elections does not extend to the duty to police the strategy of challenge [8] to the point of perfection in this aspect of the democratic process. The practicalities of administration and the desirability of finality in election results, as indicated in *Tower,* negative an absolute duty of the Board to entertain post-election challenges even though the possibility exists that ineligible ballots were counted.

The order will be enforced.

---

7. However we cannot accept the Company's conclusion that the testimony of Simpler projects unequivocal knowledge to the Board that an "all or none" eligibility issue existed among groups of the employees. The testimony of the post-election conferences cited, if anything, tends to negative that the Company advanced any such contention at that time.

8. The Company contends that consistency prevented it from challenging those linegirls not challenged by the Union. We find no merit to this argument. Civil procedure recognizes the advancement of inconsistent positions as alternatives dependent upon a fact finding and the Company would in no way be prejudiced by contending the linegirls were not supervisors and at the same time lodging challenges as an alternative means of protecting against what it now deems to be an unlawful result.