Roland John **PARISH, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 1180.

Supreme Court of Alaska.

Dec. 18, 1970.

Dick L. Madson, Fairbanks, for appellant.

G. Kent Edwards, Atty. Gen., Juneau, Stephen Cooper, Dist. Atty., and Thomas F. Keever, Asst. Dist. Atty., Fairbanks, for appellee.

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR, and ERWIN, JJ.

OPINION

CONNOR, Justice.

Appellant was convicted, after a trial by jury in the district court, of the offense of taking a motor vehicle without the owner's consent contrary to AS 28.35.010. On appeal he contends that the trial court erred in permitting the prosecution to cross-examine him concerning previous offenses of which he had been convicted, and in failing to instruct or caution the jury about the purpose for which the previous criminal convictions could be considered.

At trial the prosecution's case consisted of the testimony of Sgt. Nearing, of the Fairbanks police department, who found appellant attempting to start the engine of a vehicle belonging to Jay Hodges. Nearing testified that appellant admitted to him that he had taken the car. Hodges testified that he had not given appellant permission to use the vehicle at any time. Appellant took the witness stand in his own defense. He testified that he had been intoxicated, that the car had been lent to him by three unidentified persons, and that he had no knowledge that the automobile was a stolen one when he drove it.

On cross-examination the prosecutor attempted to go into the previous criminal convictions of the accused; an objection was made by appellant's counsel, and a colloquy between court and counsel occurred thereafter. The prosecutor was then permitted to proceed with questioning appellant, who admitted that he had been convicted of larceny in 1958, driving an automobile without the owner's consent in 1959, and convicted of the latter offense again in 1960, twice in 1961, once in 1964, and once again in 1966.

Appellant recognizes that under both the previous decisions of this court and Civil Rule 43(g) (11) (b) it was permissible to

elicit the testimony about previous criminal convictions for the purpose of impeaching his credibility. Scott v. State, 445 P.2d 39 (Alaska 1968); Gafford v. State, 440 P.2d 405 (Alaska 1968); Sidney v. State, 408 P.2d 858 (Alaska 1965); Anderson v. State, 384 P.2d 669 (Alaska 1963).[1] He asks, however, that we adopt the view expressed in the dissenting opinion in Scott v. State, supra, and that we order a new trial.

▉ Because District Court Criminal Rule 1(c)[2] prohibited instructing the jury other than to define the nature of the offense charged and the statute or regulation involved, appellant argues that there is a substantial likelihood that the jury used the previous convictions as direct evidence of guilt and not merely as reflecting upon appellant's credibility. It is argued that the court should have relaxed District Court Criminal Rule 1(c), as permitted by Rule 53 of the Rules of Criminal Procedure,[3] and should have instructed the jury that the evidence of previous convictions should not be used as evidence of guilt.

The court, in admitting the evidence, was merely following the previous decisions and opinions of this court. The objection made by appellant's counsel to the introduction of the evidence was a general one. The initial grounds for the objection are not clear. It is quite possible that the trial judge was under the impression that the objection was to the form of the question. At a later point defense counsel objected "to the introduction at all," but did not otherwise apprise the court of the ground of the objection. Neither in the colloquy with the court, which followed the objection, nor at any later time did appellant's counsel ask that the jury be cautioned about the use of this evidence, although in final argument she did stress to the jury that it could be considered only as bearing upon the credibility of appellant.[4]

In these circumstances we are not persuaded that error was committed by the trial court.

▉ As pointed out by the dissenting opinion, there has been criticism of rules permitting broad impeachment by proof of previous criminal convictions.[5] But never

1. Civil Rule 43(g) (11) (b) provides:
   "*Impeachment by Adverse Party.* A witness may be impeached by the party against whom he was called by contradictory evidence, or by evidence that his general reputation for truth is bad, or that his moral character is such as to render him unworthy of belief. He may not be impeached by evidence of particular wrongful acts, except that it may be shown by the examination of the witness or the record of a judgment that he has been convicted of a crime."

2. "(c) *Trial.* The date of trial shall be fixed by the magistrate at such time as will afford the defendant a reasonable opportunity for reparation and for representation by counsel. The trial shall be conducted as are trials in criminal cases in the superior court, except that the court shall not instruct the jury other than to define the nature of the offense charged and the statute or regulation upon which the complaint is based."

   On November 5, 1970, sections (c) and (j) of District Court Rule 1 were amended to provide for the giving of instruc-

tions in the district court in criminal cases.

3. "These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work injustice."

4. Further, we note that at the time of the testimony of prior convictions, the court stated before the jury that the purpose of the evidence was to impeach and test the credibility of appellant. We do not in this case, pass upon the question of the trial court's excluding, in its discretion, evidence of remote convictions which are offered to impeach a witness. See Luck v. United States, 121 U.S.App. D.C. 151, 348 F.2d 763 (1965); United States v. Palumbo, 401 F.2d 270, 273 (2d Cir. 1968); and State v. Hawthorne, 90 N.J.Super. 545, 218 A.2d 430 (1966).

5. M. Ladd, Credibility Tests—Current Trends, 89 U.Pa.L.Rev. 166, 184–191 (1940); J. Cohen, Impeachment of a Defendant-Witness by Prior Conviction, 6 Crim.L.Bull. 26 (1970); C. McCormick, Evidence, § 43 (1954).

to our knowledge has it been held that the application of such rules is a denial of due process of law.

Such cases as Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965), Gordon v. United States, 127 U.S.App.D.C. 343, 383 F.2d 936 (1967), and United States v. Palumbo, 401 F.2d 270 (2d Cir. 1968), relied upon in the dissent, leave the matter within the sound discretion of the trial court.[6] Furthermore, the court in Gordon v. United States, supra, speaking through Judge (now Chief Justice) Burger, held that an abuse of discretion cannot be claimed by one who failed to invoke that discretion by presenting to the trial court sufficient reasons for withholding past convictions from the jury, in the face of a statute which makes the convictions admissible. This fits precisely the case before us, where only a general objection was made by counsel to the reception of this evidence.

When the question is viewed within the context of trial court discretion, an abuse of that discretion would not be of constitutional dimension. It would be merely an evidentiary question, and the error committed, if any, would be only an ordinary criminal trial error.

The latest expression of the United States Supreme Court on the general subject of the use of previous convictions as evidence in criminal cases is Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L. Ed.2d 606 (1967). That case dealt with a state recidivist statute under which the previous criminal convictions of the defendant were put in evidence together with evidence of guilt of the primary charge. A majority of the court, speaking through Harlan, J., held that such a procedure did not violate due process of law. It might be fairer to have a two-stage procedure, under which primary guilt would first be established. Then in a separate proceeding the previous criminal convictions could be shown. However, the Supreme Court held that the selection of such procedures is peculiarly within the province of the states and is not governed by that standard of fundamental fairness which is guaranteed by the due process clause. In a dissenting opinion Chief Justice Warren stated that in his view the particular recidivist procedures employed were a violation of due process, but he was careful to say that a state has a legitimate purpose in using evidence of previous criminal convictions for impeachment purposes. Thus it is well settled that the rule allowing impeachment by previous criminal convictions is a matter which does not give rise to a constitutional claim.[7]

If the use of the previous convictions in the case at bar were held violative of some broad notion of due process, the question would then be what content or meaning would be left in the existing rule.

6. Quite different, of course, are cases concerning the proof of other criminal acts of the defendant which do not amount to criminal convictions. Such a case is United States v. Lovely, 169 F.2d 386 (4th Cir. 1948), relied on in the dissenting opinion in the case at bar. The issues at stake in the reception of that type of evidence are, in our opinion and in that of the traditional authorities, distinguishable from those presented by the rule permitting impeachment by a showing of previous convictions. We do not think that subject should be confused with the one which is before us in this case.

7. Under our decisions in Roberts v. State, 458 P.2d 340 (Alaska 1969), and Baker v. City of Fairbanks, 471 P.2d 386 (Alaska 1970), we could interpret the Alaska Constitution more expansively than the 14th Amendment due process clause. But we are not convinced that the matter before us is of constitutional magnitude. It is of interest that the recent Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, Rule 6–09, 126 et seq. (March 1969), retains an impeachment rule of relatively wide scope and rejects the discretionary rule of Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965), Gordon v. United States, 127 U.S.App.D.C. 343, 383 F.2d 936 (1967), and United States v. Palumbo, 401 F.2d 270 (2d Cir. 1968).

Many possible rules could be employed in place of the one which now obtains in Alaska. For example, impeachment by this method could be limited to crimen falsi (with attendant definitional problems); impeachment might be allowed only if the accused puts his good character in evidence; previous convictions might be excluded if the crimes are similar to the one for which the defendant is being tried; distinctions could be made between misdemeanors, or certain types of them, and felonies; or all impeachment by showing previous convictions could simply be abolished. It would be necessary to consider the extent to which distinctions should be drawn between impeachment of criminal defendants and mere witnesses. An alternative is to leave the matter of impeachment by prior convictions to the trial judge. Still another approach is to use a test of remoteness, not allowing impeachment by convictions occurring earlier than some definite point in time.

Yet these are the very matters which should be studied with care before making any change in the existing rule. No doubt the rule can be improved after careful study and reflection. But simply to overthrow our own rule at this time on unprecedented due process grounds would leave a standardless void. This we choose not to do.

Affirmed.

BONEY, Chief Justice (dissenting).

I cannot accept the result reached by the majority opinion; nor can I agree with the manner in which that result was reached.

Roland John Parish was tried before a jury in the district court on the misdemeanor charge of driving a motor vehicle without the owner's consent, more commonly called "joyriding". At trial, Parish took the stand in his own defense. The prosecution was allowed, over the objections of defense counsel,[1] to cross-examine Parish concerning his criminal record. This inquiry revealed that Parish had one previous conviction of larceny and six previous convictions of joyriding, the same crime with which he was charged. Although the evidence of prior convictions was ostensibly introduced for the sole purpose of impeaching Parish's credibility as a witness,[2] at no time did the trial court instruct the jury accordingly. Similarly, the court failed to inform the jury that the evidence of a prior criminal record could not properly be used to establish guilt.

The rules in Alaska governing the impeachment of witnesses by evidence of prior convictions are exceedingly broad,[3]

---

1. A reading of the trial transcript makes it clear that the repeated objections of Parish's attorney were meant to do more than attack the form of the prosecution's questions. Although the grounds for the objections might have been more precisely and articulately stated, the purpose of the objections was nonetheless sufficiently clear.

2. Evidence of prior convictions may be relevant and admissible for a number of purposes. See II Wigmore, Wigmore on Evidence §§ 300–416 (3d ed. 1940). However it is unnecessary to consider whether the evidence here was acceptable for any purpose other than impeachment. A perusal of the trial transcript makes clear the fact that the evidence was admitted to impeach Parish's testimony. At no time did the prosecution seek to use the prior convictions to pursue any other point. Furthermore, the state has not contended on appeal that the evidence would have been admissible as anything other than impeachment evidence. Accordingly, the inquiry here must be limited to a discussion of the impeachment issue.

3. Alaska R.Civ.P. 43(g) (11) [b] provides in part:
> [A witness] may not be impeached by evidence of particular wrongful acts, except that it may be shown by the examination of the witness or the record of a judgment that he has been convicted of a crime.

R.Civ.P. 43(h) (7) provides in pertinent part:
> A witness must answer as to the fact of his previous conviction of a crime.

Also relevant in this context is Mag.R. Crim.P. 1(c), which provides in part:
> The trial shall be conducted as are trials in criminal cases in the superior

and thus it is to be expected that their application will, on occasion, foster injustice. I believe that this is one of those occasions. More specifically, it is my view that the trial court, by applying our impeachment rules to allow unrestricted use of prior convictions, effectively deprived Parish of the fair and impartial trial guaranteed to him by the United States and Alaska Constitutions.[4] The evidence of prior convictions here was permissible only on the issue of Parish's credibility. Yet it is apparent that Parish's jury might easily have regarded his criminal record as substantive evidence of guilt. Indeed, the circumstances of the trial below make it highly unlikely that the jury could have considered the evidence as anything but direct proof that Parish committed the crime with which he was charged.

It is remarkable that there are, gathered together in this one case, so many of the factors which have elicited widespread and outspoken criticism of the rule permitting use of prior crimes evidence to impeach the testimony of a defendant in a criminal trial.[5] Initially, it must be noted that Parish's criminal background, especially his six convictions of joyriding, had little relevance to his credibility as a witness. An intricate cognitive process separates a showing of prior convictions from the conclusion that a defendant has lied on the witness stand.[6] A necessary element of that process is the finding that the individ-

court, except that the court shall not instruct the jury other than to define the nature of the offense charged and the statute or regulation upon which the complaint is based.

4. U.S.Const. amend VI states:
   In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury * *.
   U.S.Const. amend XIV provides in part:
   No State shall * * * deprive any person of life, liberty, or property, without due process of law * * *.
   Alaska Const. art. I § 11, provides in part:
   In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury of twelve * * *.

5. Commentators are virtually unanimous in their criticism of unrestricted use of prior convictions to impeach a defendant who takes the stand in his own defense. The pernicious effect of prior crimes evidence when applied to an individual accused of a crime has been pointed out by Dean Griswold:
   He [the defendant] can take the stand and deny his participation in the crime now charged. If he does this, his prior conviction can often be shown to impeach his testimony, in which case he is very likely to be convicted. Or he can refuse to take the stand, resting on his constitutional privilege, in which case he is also very likely to be convicted.
   E. N. Griswold, The Long View, 51 A.B.A.J. 1017, 1021 (1965).

For authorities discussing this subject, see McCormick, Evidence § 43 (1954); J. Cohen, Impeachment of a Defendant-Witness by Prior Conviction, 6 Crim.L. Bull. 26 (1970); Notes, Procedural Protection of the Criminal Defendant—A Re-evaluation of the Privilege Against Self Incrimination and the Rule Excluding Evidence of Propensity to Commit Crime, 78 Harv.L.Rev. 426, 440–443 (1964); Notes, Balancing Other Crimes Evidence at Trial: Of Balancing and Other Matters, 70 Yale L.J. 763 (1961); and Ladd, Credibility Tests—Current Trends, 89 U.Penn.L.Rev. 166, 184–191 (1940). See also I Wigmore, Evidence §§ 193–194 (3d ed. 1940).

6. Justice Holmes, writing in Gertz v. Fitchberg R. R. Co., 137 Mass. 77, 78 (1884), stated:
   [W]hen it is proved that a witness has been convicted of a crime, the only ground for disbelieving him which such proof affords is the general readiness to do evil which the conviction may be supposed to show. It is from that general disposition alone that the jury is asked to infer a readiness to lie in the particular case, and thence that he has lied in fact. The evidence has no tendency to prove that he was mistaken, but only that he has perjured himself and it reaches that conclusion solely through the general proposition that he is of bad character and unworthy of credit. (Cited in Scott v. State, 445 P.2d 39, 42 (Alaska 1968)).

ual's previous convictions reflect, in some way, on his credibility.

Here, six of Parish's seven prior convictions were for misdeameanors. Crimes in this category have been deemed by the legislature to be less serious, either in the element of misconduct which they involve or in their detrimental effect on society, than felonies. Accordingly, in most cases a conviction of a misdemeanor tends to have less bearing on the honesty of the convicted individual than does a conviction of a felony.

This is particularly true in the instant case, where the six previous misdemeanor convictions were for the crime of joyriding. While convictions of crimes such as forgery, embezzlement or larceny may often reveal a propensity to lie, it is difficult to see how joyriding reflects on credibility. In United States v. Carr,[7] the United States Circuit Court of Appeals for the District of Columbia commented on the relevance of a joyriding conviction to truthfulness:

> While 'joyriding' is conduct that may not be tolerated lightly, it has elements bringing it within the category of 'impulsive' crimes and should not be deemed the kind of larcenous act that is routinely considered to reflect on credibility and hence constitutes permissible impeachment.

Thus, a noticeable gap remains between an affinity for joyriding and a propensity to tell lies. Parish's criminal record appears to be at most only slightly relevant to the issue of his credibility. When the marginal worth of the prior crimes as impeachment evidence is balanced against their extremely prejudicial effect, the injustice in the present case becomes manifest.

Evidence of prior crimes introduced against a defendant will always create a danger of prejudice; but here, Parish's right to receive a fair trial was especially jeopardized by the fact that his six prior misdemeanor convictions were for the same type of offense as the one which was charged against him. The principal danger stemming from impeachment by prior crimes evidence is not that it has only slight bearing on the permissible issue of credibility, but that it has far too much bearing on the impermissible issue of guilt.[8] It is obvious that any jury will quite naturally be tempted to consider a defendant's previous conviction of a crime as substantive evidence of guilt instead of as proof of untruthfulness.[9]

This temptation becomes virtually irresistable in cases like the present one, where the defendant's prior convictions are for crimes similar to the one for which he is being tried. As Professor McCormick points out, in such cases

> [T]he danger is obvious that the jury despite instructions will give more heed to the past conviction as evidence that the accused is the kind of man who would commit the crime on charge, or even that he ought to be put away with-

---

7. 135 U.S.App.D.C. 348, 418 F.2d 1184, 1186 (1969).

8. Wigmore states, in his treatise, that evidence of prior crimes is
   objectionable, not because it has no appreciable probative value, but because it has too much. The natural and inevitable tendency of the tribunal—whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge. I Wigmore, Evidence § 194, at 646 (3d ed. 1940).

9. A twofold danger is presented when a jury is allowed to hear evidence of a defendant's prior convictions. First, the jury may simply conclude that the accused is an evil man who deserves punishment whether or not he committed the offense charged. Second, the jury may reason that if the accused has committed crime in the past, he is more likely to have committed the crime of which he has been accused.
   These two categories of prejudice are suggested by McCormick, Evidence § 43, at 93 (1954). See also Cohen, *supra* n. 5 at 32; and Notes, Other Crimes Evidence at Trial, *supra* n. 5 at 763–65.

out too much concern with present guilt, than they will to its legitimate bearing on credibility.[10]

There is, then, a possibility that the jury in the trial below, when confronted with Parish's criminal record, concluded that he was a chronic joyrider and simply convicted him on that basis.

A verdict arrived at in this way is abhorrent to the fundamental principles of our system of justice. One of the essential characteristics of the American legal tradition is the notion that in criminal matters the state must prove beyond a reasonable doubt—through direct or circumstantial evidence—that the defendant has committed the acts with which he has been charged.[11] An individual in our society is presumed innocent until proven guilty of the specific offense in question; and the mere showing of a generally bad character or of a propensity to commit a certain crime will not suffice as proof of guilt. In the present case, the evidence of prior con-

victions allowed the jury to base its verdict upon Parish's criminal record rather than upon proof that he had actually committed the offense charged. Thus, the effect of the prior crimes evidence here was to erode the presumption of innocence, and to convert it to an irrebuttable presumption of guilt.

One additional factor deserves mention. The probability that the jury in this case actually used the prior crimes evidence in an improper manner is incalculably increased by the fact that there was no instruction given by the court limiting the purposes for which the evidence could be used.[12] The question is open to dispute whether a trial judge can effectively control jury prejudice by instructing that evidence of a prior criminal record may be considered only for the purpose of determining the veracity of a defendant's testimony. Arguments and evidence are abundant that such limiting instructions cannot possibly control a jury's tendency to regard prior crimes as evidence of guilt.[13] How-

10. McCormick, Evidence § 43, at 93 (1954). *See also* Gordon v. United States, 127 U.S.App.D.C. 343, 383 F.2d 936, 940 (1967), where it was held: A special and even more difficult problem arises when the prior conviction is for the same or substantially the same conduct for which the accused is on trial. Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.'

11. In this respect, the American system differs significantly from the system existing in many Civil Law nations, where the prosecution is permitted to delve extensively into factors concerning the background and character of the accused. *See* Notes, Procedural Protection of the Criminal Defendant, *supra* n. 5 at 426.

12. The majority opinion appears to rely, to some extent, on the assertion that the trial court stated that the purpose of the evidence was to impeach. The transcript reveals the following statement was made by the court: "The purpose of these questions are for the impeachment and test the credibility of the witness." This

remark was made by the court during an extended colloquy with counsel; it was directed to counsel, and not to the jury. It would be unthinkable to construe such a brief, inarticulate and casual reference as a proper instruction. Similarly, it is difficult to see how the fact that the defense counsel argued, in summation, that the evidence was proper only for impeachment could possibly be considered a substitute for trial court instructions.

13. Substantial doubt has been cast on the usefulness of a limiting instruction in preventing misuse of prior crimes evidence. In Krulewitch v. United States, 336 U.S. 440, 453, 69 S.Ct. 716, 93 L.Ed. 790, 799 (1949), Mr. Justice Jackson wrote:
The naive assumption that prejudicial effects can be overcome by instructions to the jury * * * all practicing lawyers know to be unmitigated fiction.
A similar view was recently expressed by Chief Justice Warren, dissenting in Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606, 620 (1967):
Of course it flouts human nature to suppose that a jury would not consider a defendant's previous trouble with the law in deciding whether he has committed the crime currently charged against him.

ever, the issue is not crucial here. Whether an instruction can prevent a prejudicial application of prior crimes evidence or whether it cannot, the absence of a limiting instruction by the trial court in this case makes it possible to state with absolute certainty that Parish's jury was exposed to the full prejudicial impact of the prior crimes evidence, and that it was left free to consider that evidence as substantive proof of guilty.

It is apparent, then, that the prior crimes evidence in this case created an unusually perilous situation. The showing that Parish had been previously convicted of joyriding could only have served to divert the attention of the jury from the essential question whether Parish had in fact committed the offense charged. On the one hand, Parish's record of crime was, at best, only marginally relevant to the issue of veracity. On the other hand, because six of Parish's convictions were for crimes similar to the one with which he was charged, his criminal record was highly susceptible to prejudicial misuse by the jury. Furthermore, there was nothing whatsoever here to prevent such misuse.

Yet the majority opinion chooses to ignore the prejudicial impact of the previous convictions in the instant case. Like the trial judge, the majority of the court applies the rules of this court, and dutifully follows the path of our previous opinions. The trouble, though, is that this path is too well-beaten and allows the majority to pass, all too quickly, the principal issue raised on appeal.

I do not quarrel with the fact that the rules permitting impeachment by prior conviction were enacted and may be changed by this court. Nor do I assert that we should not, as a rule, be bound by our previous decisions. I argue only that in this particular case the rigid application of our rules jeopardized Parish's right to a fair and impartial trial and thereby deprived him of the due process to which he is entitled.[14]

A rule of court, like a statute, can be applied in such a way as to violate constitutional guarantees. It matters little whether this court has previously upheld such a rule. While we may be guided by our previous opinions in determining whether there has been a violation of due process, in the final analysis the decision must turn on the facts and circumstances of the individual case. For this reason, I do not think that we can properly allow our prior decisions to dictate a conclusion in the present case. Moreover, the issue whether introduction of prior crimes evidence against a defendant can deprive him of his right to a fair trial has not been adequately raised or decided in the previous rulings of this court.[15] In fact, with the notable

Studies have shown that this view is likely to be correct. *See, e. g.*, Kalven and Zeisel, The American Jury, 127–130, 177–180 (1966); and Notes, Other Crimes Evidence at Trial, *supra* n. 5 at 777. Moreover, the observation has been made that attorneys will frequently refrain from asking for a limiting instruction simply because it serves no purpose other than to call attention to the prejudicial evidence. *See* Ladd, *supra* n. 5 at 190. It has also been suggested that limiting instructions are illogical and cannot be obeyed, even by a willing juror. *See* Notes, Other Crimes Evidence at Trial, *supra* n. 5 at 778.

14. It must be noted that the trial judge was not without discretion to restrict or exclude the evidence of Parish's prior convictions. R.Crim.P. 53, made applicable to the proceedings in district court through Mag.R.Crim.P. 1, unequivocally authorizes the court to relax its rules of procedure in the interest of justice:

> These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work injustice.

15. We have construed our rules governing impeachment by prior conviction on four occasions: Scott v. State, 445 P.2d 39 (Alaska 1968); Gafford v. State, 440 P.2d 405 (Alaska 1968); Sidney v. State, 408 P.2d 858 (Alaska 1965); and Anderson v. State, 384 P.2d 669 (Alaska 1960). Of the four cases, only Scott v. State deals with a situation similar to the one in the instant case.

exception of the dissenting opinion in Scott v. State,[16] the previous decisions of this court, relied upon by the majority here, do not even admit the possibility that a due process issue might exist.

The issue does exist; and in my view it cannot be avoided by an intractable obedience to our rules and case law. The rule has long been settled that evidence of prior convictions may not be used in criminal cases when its only rational purpose is to show that the accused has a criminal disposition which renders him somewhat more likely to have committed the offense charged.[17] This rule cannot be classified as a mere evidentiary device; rather it has been held to be a fundamental protection required by due process of law.[18] In Lovely v. United States,[19] for example, the United States Court of Appeals for the Fourth Circuit held:

> The rule which thus forbids the introduction of evidence of other offenses having no reasonable tendency to prove the crime charged, except in so far as they may establish a criminal tendency on the part of the accused, is not a mere technical rule of law. It arises out of the fundamental demand for justice and fair-

ness which lies at the basis of our jurisprudence. If such evidence were allowed, not only would the time of courts be wasted in the trial of collateral issues, but persons accused of crime would be greatly prejudiced before juries and would be otherwise embarrassed in presenting their defenses on the issues really on trial.

A review of the record of this case leaves the overwhelming impression that the prior crimes evidence admitted against Parish could reasonably have tended to show only his general affinity toward joyriding. While an abstract argument might be made that the evidence was somehow relevant to the issue of veracity, when viewed realistically the circumstances of the trial below lead inevitably to the conclusion that the jury could only have considered Parish's prior convictions as establishing a general propensity to commit the crime charged. Because the prior crimes evidence could hardly have failed to influence the jury, it is likely that Parish's conviction resulted merely from the showing of his criminal record, and not from proof that he had actually engaged in the alleged misconduct. Accordingly, I believe that

---

On a factual basis, Scott is virtually indistinguishable from the Parish case. However, the only argument raised by the appellant in Scott was that impeachment should not have been allowed on the basis of his prior misdemeanor convictions. Although the dissenting opinion in Scott raised the question whether the evidence of prior convictions had resulted in an unfair trial, the majority opinion gave this issue only cursory mention, and appears to have placed great weight on the fact that the appellant had not argued the point.

16. Scott v. State, 445 P.2d 39, 41 (Alaska 1968), Justice Rabinowitz, dissenting.

17. The rule has been stated by Professor McCormick as follows:

The rule is that the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some other purpose than to show a probability that he committed the crime on trial because

he is a man of criminal character. McCormick, Evidence § 157 (1954). *See also*, Wigmore, Evidence §§ 193–194 (3d ed. 1940).

18. *See, e. g.*, Lovely v. United States, 169 F.2d 386, 389 (4th Cir. 1948), and Railton v. United States, 127 F.2d 691, 693 (5th Cir. 1942). In Spencer v. Texas, 385 U.S. 554, 574–575, 87 S.Ct. 648, 658–659, 17 L.Ed.2d 606, 619–620 (1967), Chief Justice Warren, dissenting, wrote:
While this Court has never held that the use of prior convictions to show nothing more than a disposition to commit crime would violate the Due Process Clause of the Fourteenth Amendment, our decisions exercising supervisory power over criminal trials in federal courts, as well as decisions by courts of appeals and of state courts, suggest that evidence of prior crimes introduced for no purpose other than to show criminal disposition would violate the Due Process Clause. (Footnotes omitted)

19. 169 F.2d 386, 389 (4th Cir. 1948).

the conviction in this case should not be allowed to stand.

I would reverse the judgment of the district court and remand for a new trial consistent with the views expressed in this opinion.[20]

RABINOWITZ, J., concurred.

20. Although I believe that the reversal in this particular case is warranted even under the existing broad rules of impeachment, ultimately, critical scrutiny must be directed to our rules. They have, after all, permitted the situation in the instant case to arise.

The urgent necessity to change the existing impeachment procedures was thoroughly discussed in the dissenting opinion in Scott v. State, 445 P.2d 39, 41 (Alaska 1968). There, members of the bar were called upon to offer proposals for change. It will be sufficient here to reemphasize the necessity for adopting a more enlightened approach to the handling of prior crimes evidence in impeaching defendant-witnesses. To this end, I would call attention to the views stated in the dissenting opinion in Scott, to the authorities cited *supra* n. 5, and to the various alternatives which have already been formulated. *Compare*, for example, the American Law Institute's Model Code of Evidence Rule 106(3) (1942), with the decisions of the United States Circuit Court of Appeals for the District of Columbia in Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965), and Gordon v. United States, 127 U.S.App.D.C. 343, 383 F.2d 963 (1967).